[No. 17189. Department One. February 1, 1923.]

J. H. LONG *et al., Respondents,* v. THE FIVE-HUNDRED COMPANY, *Appellant.*[1]

SALES (105)—IMPLIED WARRANTY—SALE BY DEALER—LIABILITY. Upon an order for an auto truck suitable for hauling saw logs and timber products, a dealer making the sale impliedly warrants that the truck furnished is suitable for the purpose.

EVIDENCE (169)—TO VARY WRITING—SEPARATE AGREEMENT—COMPLETENESS OF WRITING—IMPLIED WARRANTY. Although a conditional sales contract contains the terms and conditions of the sale of an auto truck, parol evidence is admissible to show circumstances and conditions apart from the subject matter of the writing, whereby it appears that the auto truck was furnished for a particular purpose under an implied warranty that it was suitable for such purpose.

SALES (165)—WARRANTY—BREACH—MEASURE OF DAMAGES. The measure of damages for breach of an implied warranty of the fitness of an auto truck, conditionally sold, where the buyers did not return it immediately but used it for some months, when it was converted by the seller, is the amount paid on the purchase price, less the value of the use of the truck.

Appeal from a judgment of the superior court for Pend Oreille county, Carey, J., entered December 10, 1921, upon the verdict of a jury rendered in favor of the plaintiffs, in an action on contract.. Reversed.

*Allen, Winston & Allen,* for appellant.

· *E. L. Sheldon* and *J. A. Rochford,* for respondents.

FULLERTON, J.—This is an action brought by the respondents, Long & Harris, against the appellant, the Five Hundred Company, to recover in damages as for breach of warranty in the sale of an automobile truck by the appellant to the respondents. In a trial before a jury in the court below, there was a verdict in favor of the respondents, and from the judgment entered thereon the appeal is prosecuted.

[1]Reported in 212 Pac. 559.

The evidence on the part of the respondents, and which the jury saw fit to believe, tended to show the following facts: In January, 1920, the respondents were negotiating for a contract to haul saw logs and kindred timber products, and desired to purchase an automobile truck for that purpose. The appellant, hearing of their desire to purchase a truck and knowing the purposes for which it was to be used, brought from Spokane, its place of business, to Newport, the place of residence of the respondents, a Day-Elder Auto Truck, of three and one-half tons capacity, and offered to sell it to the respondents, representing and guaranteeing that the truck was suitable for respondents' purposes, and would "stand up and do the same work as any other 3½ ton auto truck, excepting the White auto truck." A contract was entered into by which the respondents purchased the truck at an agreed price of $4,000; of which price $900 was paid in cash, and the balance agreed to be paid in monthly instalments of $310 each, commencing with the fifteenth day of March following. The respondents took possession of the truck and made some three or four payments on the purchase price, the whole, with the original payment, amounting to the sum of $1,720.65.

The truck, when put to the work of hauling logs, would not stand the strain of transporting its capacity load. The rear axle broke a number of times and was replaced, finally breaking in such a manner as to destroy the housing covering the rear bearings. At about the time of this last break, the respondents notified the appellant to repair the truck so as to make it perform the work for which it was purchased. Shortly thereafter the appellant sent a man for the truck and it was taken to Spokane, where, a few days later, the respondents were summoned to consult with reference

to its defects. At this consultation it was determined that the rear axle was not of sufficient strength to stand the strain put upon it, and that the truck was geared too high for logging purposes. It was agreed that certain changes were necessary to remedy these defects, but owing to a disagreement as to which of the parties should bear the expense of the contemplated repairs, the repairs were not made. The appellant, however, refused to return the truck to the respondents on their demand, and afterwards converted it to its own use.

Of the errors assigned, the first to be noticed is that the court erroneously held that there was an implied warranty of the fitness of the truck for the purposes for which it was intended to be used. The contention is that there was a sale of a definite described article, hence no implied warranty of fitness for the purpose for which it was sold, under the rule of the cases of *Hoyt v. Hainsworth Motor Co.*, 112 Wash. 440, 192 Pac. 918, and *United States Cast Iron etc. Co. v. Ellis*, 117 Wash. 601, 201 Pac. 900. These cases, it is true, sustain the general principle that, where a known, described and definite article is ordered of a dealer, who is not the manufacturer of the article, and an article of the known and described kind is delivered, there is no warranty that the article supplied is suitable for the purpose for which the buyer intends to use it, even though the buyer may have made known to the dealer, at the time he gave the order, the intended use; but we think the rule so announced inapplicable to the facts of the present case. The order here was not for a truck of a specific kind or manufacture, but was an order for a truck suitable for hauling saw logs and timber products. The appellant produced the particular truck and sold it to the respondents, knowing the purpose for which it was

intended to be used. The facts, therefore, bring the case within the rule of the case of *Hausken v. Hodson-Feenaughty Co.*, 109 Wash. 606, 187 Pac. 319, the rule recognized in the second of the cited cases as being the converse of the rule there held applicable. In other words, there was here a sale of a particular article for a particular purpose, and the rule of implied warranty of fitness for the purpose is applicable.

The second contention is that the evidence fails to show that the automobile truck was sold by the appellant to the respondents, but, on the contrary, shows conclusively that it was sold to them by one Hall. The materiality of this is not to us at once apparent, as the truck was concededly the property of the appellant, and, if it was in fact sold by Hall, he sold it as the agent of the appellant. But since the parties have themselves treated it as material, we have examined the evidence on the question. The evidence does, indeed, present an aspect in some respects strange, but we cannot think it so far conclusive as to warrant us holding that it left nothing for the jury to pass upon. As we view it, it was in decided conflict, and was properly submitted to the jury.

The truck was sold on a contract of conditional sale, and a writing was entered into between the parties expressing the agreement, and stating the terms and conditions of the sale with respect to the payment of the purchase price and the remedy of the seller in case default was made therein. It is contended that this contract was complete in itself and stated all of the terms of the sale, and that to admit evidence of an express or implied warranty was to permit a written instrument to be varied by parol. But the general rule is that the existence of a separate oral agreement as to any matter on which a written contract is silent,

and which is not inconsistent with its terms, may be proven by parol, if, under the circumstances of the particular case, it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. *Seitz v. Brewers' Refrigerating Machine Co.*, 141 U. S. 510. The implied warranty of fitness in this instance arose from the circumstances of the sale. It was entirely apart from the subject-matter of the writing, which, as we have said, related only to the terms of the sale and the remedies for a breach of the terms. It was not error, therefore, to permit a showing of the entire transaction, nor error to draw the legal conclusions obviously arising from the evidence as a whole.

On the questions of the agency of Hall, whether or not the truck was defective in construction, and whether the overloading of the truck was the cause of the breaks, the most that can be said is that the evidence was conflicting. There was no such absolute want of evidence as would warrant the court in taking any of the questions from the jury.

On the measure of damages the court gave the following instruction:

"Accordingly, you are instructed that if the jury find from a preponderance of the evidence that plaintiffs were at the time alleged in the complaint, co-partners, doing business under the firm name and style of Long & Harris, and that on or about the first day of February, 1920, the plaintiffs made known to the defendant that they desired to purchase an auto truck for the purpose of hauling saw logs and timber products, and that the defendant sold the plaintiffs an auto truck for the purpose of performing said work, and that thereupon plaintiffs purchased said auto truck from the defendants for the sum of $4,000, and paid down on said sum the sum of $1,720.65; and that there-

after when said plaintiffs put said auto truck to the use for which it was purchased, the same became unfit and unsuitable for such purpose by reason of a latent defect in the same, to wit, that the rear axle of said auto truck would not stand the strain of carrying and transporting a load of saw logs, and would continually break and that when said plaintiffs purchased said auto truck from the defendant. such defect was not discovered by the plaintiffs upon ordinary inspection, and that thereupon defendant took said auto truck into their possession for the purpose of making alterations and repairs on said auto truck for the purpose of rendering it fit and suitable to haul saw logs and timber products, and that thereupon defendant failed, neglected and refused to make such alterations and repairs and took and retained in its possession such auto truck, then, you are instructed, that plaintiffs can recover in this action such sum as they have paid on the purchase price of said auto truck, not to exceed the sum of $1,720.65.''

This we are constrained to conclude was error. There was not a mutual rescission of the contract of sale; simply a plain conversion by the appellant of the respondents' interests in the property. Since in this state punitive or exemplary damages are not recoverable except in those instances where the statute expressly makes them so, of which this is not an instance, the ordinary measure of the respondents' recovery would be the value of the property at the time of the taking, against which the appellant could offset the unpaid part of the purchase price. But this transaction has certain added elements which render this measure inapplicable. Owing to the structural defects of the truck, it was not worth at the time of its purchase the sum the respondents agreed to pay for it, and any correct measure of damages must take into account this fact. On the other hand, the respondents did not return the truck when the defect was first

discovered; in fact, did not consent to its return at any time, but continued to use it in their business until it was actually taken away from them by the appellant, a period of nearly six months. This use was of value to them, and it would be unjust to the appellant not to take it into account in determining the compensation they should pay the respondents for the truck. A measure closely approximating the respondents' loss would be, we think, the amount paid upon the purchase price of the truck, less the value of the use of the truck during the time it was in the respondents' possession. In view of the evidence, it may be well to say that, in determining this value, the respondents are entitled to deduct the time it was incapable of use by reasons of the breaks of the axle, and the time the weather conditions rendered it impossible or impractical to use the roads over which the hauling was to be done. In other words, they are entitled to deduct such time as the failure to use the truck was not the result of their own fault.

The appellant cites as sustaining the court's instructions on the measure of damages the case of *Hausken v. Hodson-Feenaughty Co., supra,* possibly relying upon the expression found at the bottom of page 613 of the opinion, to the effect that the purchase price of goods may be recovered if the goods are subsequently removed by the seller. But this rule, while applicable to the facts of the case upon which it was rested, is too broad as a rule of general application. As we have said, compensation is the basic measure for the recovery of damages in this state, and where the general rule, as there announced, permits more than this, some modification of it must be made.

The appellant also complains that the court did not submit to the jury its theory of the case; namely, that

the tractor was not defective, and that it was taken from the possession of the respondents because of their failure to make the instalment payments of the purchase price as they became due. There was evidence from which the jury could have concluded that such were the facts, and a proper submission of the case to the jury warranted such an instruction. The appellant, however, did not request an instruction on this subject, and the failure of the court to so instruct possibly fell under the rule of non-direction rather than that of mis-direction. But as to this we shall not inquire. The case must be reversed because of the instruction on the measure of damages, and the matter is mentioned that it may be properly met in the new trial which must follow.

Reversed and remanded for a new trial.

BRIDGES, PARKER, MITCHELL, and TOLMAN, JJ., concur.