Argued January 17, affirmed February 27, 1923.

## PENDERGRASS *v.* FAIRCHILD.

(212 Pac. 963.)

**Sales—Allegation That Machine was and is Defective, Held to Cover Period of Warranty and Time Subsequent Thereto—"Was and is."**

1. In an action for damages arising from a defective ice machine and refrigerating plant, bought under a contract containing a warranty for one year from date of contract, the complaint alleged that the machine "was not well made, * * and did not do good work and did not properly perform its functions, * * and was and is not of a capacity adequate for plaintiff's needs, and was and is of no value," etc. *Held*, construing the complaint as a whole, it is a reasonable inference that the defects in the ice machine were in existence during the period of time covered by defendant's warranty, and that the machine failed to function during that period. If "is" refers to time of filing complaint, "was" refers to any time within the period of warranty and the time following the date of sale.

**Appeal and Error—Pleading—When Complaint not Objected to Below Appellate Court will Indulge Inferences That It States Cause of Action.**

2. The objection that a pleading fails to state a cause of action may be raised in the appellate court for the first time, but, when a complaint reaches the appellate court without having been demurred to or in any way moved against, every reasonable inference or fair intendment will be resolved in support thereof.

**Contracts—To Recover for Breach of Contract, Party must Allege Breach.**

3. A party may not recover for breach of a contract without alleging and proving such breach.

**Appeal and Error—Jury's Determination of Facts Binding on Appeal.**

4. Questions of fact, as determined by the jury, when properly submitted to them, are binding on the appellate court.

### Sales—When Evidence Conflicting, Case for Jury.

5. Where, in buyer's action for damages for a defective ice machine and defectively installed refrigerating plant, the evidence was conflicting, *held*, the case was peculiarly within the province of the jury, and defendant's motion for nonsuit was properly denied.

### Sales—Evidence Held Sufficient to Show Seller Knew Purpose for Which Goods Purchased, and That Buyer Relied on Seller's Skill and Judgment.

6. In an action by a buyer against seller for damages arising from a defective ice machine and refrigerating plant, evidence *held* sufficient to show that the seller was informed, expressly or by implication, of the purpose for which the goods were purchased, and that the buyer relied on the seller's skill and judgment, within Section 8178, Or. L.

### Sales—Seller's Right to Repair Goods Sold Restricted to Contract Guaranty to Which Goods Relate.

7. Parties to a contract of sale may expressly provide for the limitation of the right of the buyer in case of a breach of warranty, but the seller's right under a contract to repair goods sold will be restricted to the guaranty to which the goods relate, and will not bar a claim for the breach of another independent warranty.

### Sales — Evidence Held Sufficient to Support Jury's Finding That Seller Given Full Opportunity to Repair Machine Sold Under Warranty and That He Failed to Repair.

8. Where a defendant seller not only expressly promised to repair the ice machine sold in case of any defect caused by weakness or defect in construction or material, but likewise warranted that machine would, for the period of one year, properly perform its functions as such, *held*, from the evidence, the jury had a right to believe that defendant was given a full opportunity to repair, and that he failed.

### Sales—Evidence Held Sufficient to Justify Finding That Ice Machine Did not Properly Function as Warranted.

9. Evidence, in an action against a seller for damages arising from a defective ice machine, *held* sufficient to justify a finding by the jury, if testimony believed, that ice machine failed to function properly.

### Sales—Answer to Question as to How Much Ammonia Buyer Purchased Because of Defective Ice Machine Held Competent as Going to Question of Damages Sustained by Buyer.

10. In an action against a seller for damages from a defective ice machine alleged to be so faulty that ammonia steadily escaped therefrom, permeated the place of business, and drove customers away, etc., the answer to the question to plaintiff buyer, "How much ammonia did you buy for that machine between August 5th," etc., *held* competent evidence in support of material averment of damages sustained by plaintiff by reason of the failure of the machine to function properly.

Sales—Instruction That Burden of Proving Buyer Negligently Operated Ice Machine upon Defendant Seller Held Proper.

11. Where, in an action against a defendant seller for damages from a defective ice machine, the defendant alleged that, if the "ice machine leaked any ammonia or has developed any fault or weakness," it was due to the negligent operation of plaintiff, an instruction that the burden of proof was upon defendant to establish that fact from a preponderance of the evidence *held* proper under the evidence.

Sales—Defendant must Prove His Own Affirmative Allegations of Plaintiff's Negligence.

12. A seller must be held to prove his own affirmative allegations that damages from operation of machinery sold were due, not to defects covered by his warranty, but were due to the plaintiff's negligence: Sections 726, 810, Or. L.

From Multnomah: JOHN McCOURT, Judge.

Department 2.

The plaintiff, G. C. Pendergrass, is a dealer engaged in the retail meat and grocery business in Portland, Oregon. The defendant, Ray Fairchild, manufactures, installs and sells refrigerating plants. The plaintiff avers that on the fifth day of August, 1919, the defendant sold to plaintiff an ice machine and refrigerating plant, for the agreed price of $900, and that the defendant represented and warranted the machine to be well made, of good material, and that it would perform its functions "as well as any other machine or refrigerating plant." Plaintiff further avers that he relied on that warranty. It is also alleged that at the time of the sale the defendant was well acquainted with the purpose for which the machine was to be used by plaintiff; that defendant warranted the ice machine to be of a capacity and fitness which would adequately supply to plaintiff a refrigerating system that would preserve his meats, produce and perishables kept for sale by him, and that plaintiff relied upon such representations. It is also averred that—

"said ice machine and refrigerating plant was not well made of good material, and did not do good work and did not properly perform its function, and was and is not of a fitness sufficient for plaintiff's needs, and was and is not of a capacity adequate for the needs of plaintiff, and was and is of no value whatever for the purpose of furnishing refrigeration for use in plaintiff's place of business."

Plaintiff alleges that by reason of the inferior quality of the material used in the construction of the machine, it failed to function, whereby his perishable produce and his meats were spoiled; that the machine leaked large quantities of ammonia gas, which permeated the place of business of plaintiff, driving therefrom numbers of customers and creating a nuisance that caused his landlord to demand that the operation of the machine cease; all of which caused damage to plaintiff in his business in the sum of $2,500.

The defendant filed an answer, putting at issue the material allegations of the complaint other than the sale of the machine, and by an affirmative answer set up a writing termed "Conditional Sales Contract," which is, in part, as follows:

" * * It is further mutually agreed by and between the said party of the first part and the party of the second part that the party of the second part, in consideration of the premises aforesaid, shall, for a period of one (1) year from the date hereof, guarantee the said ice-machine to properly perform its functions and shall repair the said ice machine in case of any defect caused by weakness or defect in the construction or material of said machine; the said party of the second part shall not be obliged to repair said machine for any breakage or damage to the same caused by improper care, handling or operation of the same by the party of the first part."

Defendant further alleged that no warranties other than those contained in the above writing were made, and that any defects developing in the machine were due to lack of care and of proper operation on the part of respondent.

Plaintiff denied all of the affirmative allegations of the answer, but admitted the execution of the conditional sales contract.

Trial was had and verdict was returned for plaintiff in the sum of $900. From judgment rendered thereon, defendant appeals to this court and avers that the court erred in the admission of certain testimony; in denying defendant's motion for nonsuit and for a directed verdict; in giving certain instructions to the jury excepted to by the defendant, and in overruling defendant's motion for a new trial and for judgment notwithstanding the verdict.    AFFIRMED.

For appellant there was a brief over the names of *Mr. J. J. Fitzgerald* and *Mr. G. L. Buland,* with an oral argument by *Mr. Fitzgerald.*

For respondent there was a brief and oral argument by *Mr. William B. Layton.*

BROWN, J.—1. Defendant asserts failure of plaintiff to state a cause of action in his complaint, because the allegation reading that the machine—

"was not well made, of good material, and did not do good work and did not properly perform its functions, and was and is not of a fitness sufficient for plaintiff's needs, and was and is not of a capacity adequate for plaintiff's needs, and was and is of no value whatever for the purpose of furnishing refrigeration for use in plaintiff's place of business"

fails to aver the time when the ice machine failed to perform its functions.

It will be noted that it is alleged in the complaint that the machine "was and is defective."

It is asserted by defendant that "is" refers to the time of filing the complaint. That document was filed three days after the expiration of one year, for which the warranty covered. "Was" refers, with equal precision, to any time within the year and three days following the date of the sale.

Now, does it appear that the machine failed to function during the period of time covered by the warranty?

The complaint must be construed in its entirety. Considering that document as a whole, it is a reasonable inference from the allegations contained therein that the defects in the ice machine were in existence during the period of time covered by defendant's warranty, and that it failed to function during that time.

2. It will be remembered that this is the first time the defendant has assailed the complaint on the ground that it fails to state a cause of action. The objection that a pleading fails to state a cause of action may be raised in the appellate court for the first time. This proposition has been so well settled that citation of authority may be regarded as superfluous. However, when a complaint reaches this court without having been demurred to or in any way moved against, every reasonable inference or fair intendment will be resolved in support thereof. This proposition is also so well established that reference to the authorities is unnecessary.

3. It is primary learning that a party may not recover for breach of a contract without alleging and proving such breach.

"There can be no recovery unless plaintiff sets forth a breach by defendant of the contract in suit * * . And it follows that there can be no recovery on a breach not assigned by plaintiff * * . Where there is not an entire failure to state a breach, and the averment is simply uncertain and defective, it has been held that the defect can be reached only by special demurrer particularly designating the specific point at which it is aimed. A failure to allege a breach cannot be cured by verdict; but if the statement of the breach is merely defective, such defective statement will be good after verdict." 13 C. J., § 863, pp. 731, 732.

4. The questions that arise in this case are largely questions of fact, which were properly submitted to the jury, and their determination thereof is binding upon the court. As we have previously stated, Pendergrass, the plaintiff, conducted a grocery store and a retail meat market, while the defendant was the manufacturer and seller of ice machines and refrigerating plants. It appears from the record that the plaintiff was desirous of purchasing, and that defendant, the manufacturer, wished to sell to the plaintiff, the machinery involved in this litigation. Pursuant to certain preliminary negotiations between the parties, the defendant manufactured and installed in plaintiff's place of business a refrigerating plant. Pendergrass was ignorant of the method of operating the refrigerator, which fact was well known to defendant. Fairchild also knew the business in which Pendergrass was engaged, and the purpose for which the refrigerating plant was to be used by plaintiff. Fairchild was the manufacturer of the machine, and he knew, or should have known, its capacity. He also knew the capacity of a machine required by plaintiff's business. Knowing these facts, he installed the refrigerating plant in the plaintiff's place of business

The installation of the machinery was made some time before the conditional sale to Pendergrass. In fact, it was some weeks after the plant had been constructed and installed in plaintiff's place of business before the conditional sales contract was executed by plaintiff and defendant. When the contract was made, the sum of $200 was paid defendant by plaintiff, and plaintiff agreed to pay the further sum of $50 per month until the full sum of $900, purchase price, together with interest, was paid. It was understood that the machine was to remain the property of the seller until fully paid for. The contract of sale provided that the seller would, for a period of one year from the date of the execution of the agreement, warrant the ice machine properly to perform its functions. It further provided that he would repair the machine in case of any defect "caused by weakness or defect in the construction or material of said machine."

5. We have read the record with care. There is much testimony tending to show that the refrigerator did not properly perform its functions during the period covered by the warranty. If what the plaintiff's witnesses say is true, the refrigerating plant was not only deficient as such, but, when operated, created a nuisance. Upon the other hand, there is considerable testimony in the record to the effect that the machinery was properly constructed and installed, and that its failure was due to the ignorance, carelessness and negligence of Pendergrass. In truth, the direct conflict in the testimony makes this a case peculiarly within the province of a jury, and the court properly denied defendant's motion for a nonsuit.

6. Pendergrass testified that after the machine had been installed, fumes of ammonia began escaping

therefrom; that he tried to fix it and then called Mr. Fairchild, the defendant herein, to repair the machine; that there never was a time when escaping ammonia fumes could not be smelled; that the machine was tightened from time to time; that sometimes Fairchild was personally present, and that at other times he was represented by his employees; that the machine leaked ammonia gas about as long as it was in his place of business; that upon occasions the leak was very bad; that he called on Fairchild to repair it numerous times, and at other times called the shop when, on many occasions, no one came to his assistance, with the result that he was compelled to employ others who were skilled in repairing ice machinery, but that they failed to mend the machine so as to abate the escape of fumes of ammonia. He testified that he called Fairchild to repair the machine more than twenty times during the year, but that he failed to fix the machine to plaintiff's satisfaction; that it was always leaking ammonia somewhere, and at times it failed to cool the cases, thereby resulting in injury to plaintiff's meats and butter "and everything that was in all the cases * * ; also the front window was fixed up with the same style, and everything in there would all have to be taken out and recleaned up, and you couldn't put the same stuff back in again for a * * show-window; you would have to use different stuff and work the other off in some kind of a way."

S. R. Winch testified that he was one of the owners, and the manager, of the property in which the plaintiff's store was situate. He stated that he went to Pendergrass's place of business a great many times on account of complaints from tenants in the building that they could not stand the conditions that there existed by reason of the odor of ammonia which per-

106 Or.—35

meated the building. The witness said he made no attempt to go into the basement beyond the top of the stairs. He stated:

"The hotel came to me a number of times, telling me that they had two or three rooms that they couldn't rent."

He testified that he found a very strong smell of ammonia in the adjacent stores and in the hotel above, especially in rooms situate in the rear of the building; that while Pendergrass was an old tenant, he told him that he would have to eliminate the smell or leave; that he made six or eight trips to see Pendergrass.

Some of the expert machinists testified that the machine was old and worn.

Section 8178, Or. L., the same being Section 15 of Chapter 91, Laws of 1919, generally known as the "Uniform Sales Law," provides:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. * *

"(6) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

In the application of the foregoing, it has been written that—

"In order to bring a case within the purview of this subdivision (fitness for known purpose), two things must appear: First, that the seller was informed, ex-

pressly or by implication, of the purpose for which the goods were purchased; and second, that the buyer relied on the seller's skill and judgment: *Wasserstrom* v. *Cohen*, 165 App. Div. 171 (150 N. Y. Supp. 638); *Thompson* v. *Meyercord Co.*, 174 N. Y. Supp. 733." Uniform Laws Ann., Vol. 1, Sales Act, p. 66.

Both are clearly apparent in the case at bar.

7. It is strenuously argued that the parties to the contract of sale stipulated for an express remedy, in the event of its breach, that binds plaintiff to look exclusively to the seller to repair his refrigerator. It is a general rule that the parties to a contract of sale may expressly provide for the limitation of the right of the buyer in case of a breach of warranty: *Feeney & Bremer Co.* v. *Stone*, 89 Or. 360, 366 (171 Pac. 569, 174 Pac. 152); 24 R. C. L., § 528, p. 250. See notes, Ann. Cas. 1915D, 1116. However, this general rule can afford the defendant no comfort, because the right to repair the machinery will be restricted to the guaranty to which it relates, and will not bar a claim for the breach of another independent warranty: *McCormick Harvesting Mach. Co.* v. *Fields*, 90 Minn. 161 (95 N. W. 886); *Lindsay* v. *Fricke*, 130 Wis. 107 (109 N. W. 945); *Perrine* v. *Serrell*, 30 N. J. Law, 454; *Wood* v. *Sherwood*, 161 App. Div. 335 (146 N. Y. Supp. 465).

8. The defendant not only expressly promised to "repair the said ice machine in case of any defect caused by weakness or defect in the construction or material," but likewise warranted that that machine would, for the period of one year, properly perform its functions as such. The jury had a right to believe, and no doubt did believe, that the defendant was given a full opportunity to repair, and that he failed.

9. There was likewise an abundance of evidence from which it could base a verdict, if it believed the testimony, that the ice machine failed to function.

10. The following question was asked and answered over defendant's objection:

"Q. Mr. Pendergrass, can you tell me how much ammonia you purchased for that machine between the 5th day of August, 1919, and the 5th day of August, 1920?

The answer to the foregoing question was competent evidence in support of a material averment going to the matter of damages sustained by the plaintiff by reason of the failure of the ice machine to function.

11. The court instructed the jury, among other things, that:

"The burden of proof is upon the defendant to establish to your satisfaction, from a preponderance of the evidence, that plaintiff failed to exercise reasonable care as I have defined the same to you in handling, operating or caring for said ice machine."

This instruction is objected to by the defendant. In his further and separate answer and defense, he averred:

"That if the said ice machine has leaked any ammonia gas or has developed any fault or weakness, the same is due solely to the negligent and unskillful manner in which it has been operated by the plaintiff herein."

The instruction given was applicable to the evidence offered upon the part of the defendant in support of the allegation quoted above, and was entirely proper.

12. The case of *Oregon Auto-Dispatch* v. *Portland Cordage Co.*, 51 Or. 583 (94 Pac. 36, 95 Pac. 498), an

action to recover damages for breach of warranty, is illustrative of the doctrine involved herein. In that case, the plaintiff purchased from the defendant a rope intended to be used by plaintiff to lower a safe from a building situate in Portland. It was averred:

"That defendant, with full knowledge of the purpose for which said rope was purchased, sold and delivered to plaintiff a certain four-strand manila rope, with the warranty that said rope so sold was of sufficient strength to safely lower and handle said safe."

It was further alleged that the plaintiff relied upon the defendant's warranty, and that he attempted to lower the safe, but that the rope, being of insufficient strength to carry the weight of the safe, parted, and the safe dropped to the basement of the building, resulting in damage. Defendant denied the material allegations of the complaint, except the allegation of the purchase of the rope, and affirmatively alleged that the breaking of the rope and the damage resulting therefrom was occasioned by the careless and negligent manner in which the rope was handled and used by plaintiff, or by the careless and unskillful manner in which the safe was handled by plaintiff, or by the defective appliances used in moving the safe. In that case this court said:

"Plaintiff's negligence was a matter of defense, and is so pleaded, and the burden was upon defendant to prove it: 5 Ency. Pl. & Pr. 10; 30 Am. & Eng. Ency. Law (2 ed.), 208."

The defendant must be held to prove his own affirmative allegations of the plaintiff's negligence: Or. L., §§ 726, 810.

At the conclusion of all the evidence, the defendant moved for a directed verdict, "for the reason that there is not sufficient evidence * * and the further reason that the complaint is such a fatal variance

from the contract." From our view of the case, there was no error committed by the court in denying the motion.

We have carefully considered all the assignments of error, and find no good reason for reversing this case.

AFFIRMED.

McBRIDE, C. J., and BEAN and RAND, JJ., concur.

Mr. Justice McCOURT did not participate in the consideration of this case.