[No. 25808. Department Two. December 2, 1935.]

PAUL PURATICH, *Respondent,* v. PACIFIC MARINE SUPPLY COMPANY, *Appellant.*[1]

*G. E. Steiner, Karl H. Kober,* and *Roberts & Skeel,* for appellant.

*Monheimer & Griffin,* for respondent.

MAIN, J.—This action was brought to recover the value of a number of bales of cotton netting which,

[1]Reported in 51 P. (2d) 1080.

it is claimed, was defective, and damages for the loss sustained by reason of failing to catch the quantity of fish which would have been caught had the netting, which was worked into the purse seine, not been defective. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff for $2,500 for loss of fish and $445.96 for the loss of the net. The defendant moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial, both of which motions were overruled. From the judgment entered upon the verdict, the defendant appeals.

The facts which will present the controlling questions here for determination may be summarized as follows: The appellant, Pacific Marine Supply Company, is a corporation organized under the laws of this state, with its principal place of business in Seattle, where it is a dealer in marine merchandise, including fish netting. The respondent, for fourteen or fifteen years, had been engaged in the business of purse seine fishing for salmon in Puget Sound and adjacent waters. He was the owner of the Lone Eagle, a purse seine type of fishing boat.

In November, 1932, the respondent ordered from the appellant a quantity of four-inch mesh fish netting for use during the season of 1933. This netting was paid for and delivered to the respondent May 5th of that year. At the time the netting was delivered and paid for, the respondent received from the appellant a bill or invoice describing the netting in detail. Between the heading of the bill and the itemized statement of the purchases, there was printed in red ink the following:

"This netting is sold to and accepted by the buyer on the express condition that our responsibility under any guarantee, expressed or implied, ceases after netting has been put into the water or after netting

has been treated in any manner, for any purpose, whether by us at customer's request, or by customer or others.''

The netting was transported by the respondent to his home at Gig Harbor and there used, with other netting, in the construction of a purse seine.

The netting was manufactured in strips about twenty-two feet wide, and there were five strips in the seine in question. The top strip was old netting, which was used by the respondent during previous seasons. The second and third strips, counting from the top, were a part of the netting in question in this case. The fourth and fifth strips were also old netting, which had been used by the respondent in former seasons.

In the construction of the purse seine, these strips were lashed together. A succession of corks was attached to the top of the seine, which carries the weight thereof in the water, and through which a line is passed known as the ''cork'' line. A succession of heavy lead rings was attached to the bottom of the seine, through which a line is passed, known as the ''lead'' line. In practice, the cork line is made about ten per cent longer than the lead line, so that the seine, when set, will form a bag. The seine, when completed, is about eighteen hundred feet long and about one hundred ten feet deep.

After the completion of the seine, the respondent, with his vessel and crew, proceeded to the fishing waters of Puget Sound and fished during the season of 1933, the results of which were unsatisfactory because they were not getting as many fish as some of the other vessels. At the end of the season, the seine was dismantled and dried.

In March, 1934, the respondent began to prepare the net for the fishing season of that year. He claims

that he then discovered for the first time irregularities in the size of the mesh in the strips of netting purchased from the appellant. The theory of the action was that the irregularity in the size of the mesh used caused that side to be longer than the other side, and that, in operation, it did not form the bag necessary for successful fishing, and on that account the fish escaped which otherwise would have been caught. The netting purchased from the appellant consisted of six bales, three of which were used in the construction of the seine.

As already stated, the action was brought to recover for the loss sustained by the purchase of the seine and for the damages sustained by the failure to catch the quantity of fish that would have been caught had the same not been defective. Upon the question of whether the seine was defective or not, the evidence was in direct conflict.

The first question is whether the appellant, a dealer in marine supplies, including fish netting, had impliedly warranted that the netting was suitable for the purpose for which it was purchased.

Rem. Rev. Stat., § 5836-15 [P. C. § 6227-15], which is one of the sections of the uniform sales act of this state, provides:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality. . . ."

It will be observed that, under the first subdivision, there is no implied warranty of fitness for a particular purpose unless that purpose is made known to the seller and the buyer relies on the seller's skill or judgment. In the case now before us, the evidence shows that the purpose for which the netting was sold was made known to the appellant, the seller. But there is no evidence from which it can be inferred that the respondent relied upon the seller's skill or judgment. In fact, his testimony was, in effect, to the contrary. If the respondent did not rely on the seller's skill or judgment, he has not fulfilled the requirements necessary to make a cause of action on the ground of implied warranty of fitness for a particular use. *Salt Lake Hardware Co. v. Connell,* 47 Wyo. 145, 34 P. (2d) 23; *Pendergrass v. Fairchild,* 106 Ore. 537, 212 Pac. 963.

There is, however, a contention in the respondent's brief that the sale was one by description, under the second subdivision of the portion of the section of the statute quoted. The theory of the action, as outlined in the complaint, was that there had been a breach of the implied warranty of fitness, and the case appears to have been tried on that theory. Assuming, without so deciding, that the respondent can invoke the provision in the statute covering the sale of goods by description, the result must be the same.

Upon the trial, the bill or invoice above referred to was produced by the respondent at the request of the appellant, and the latter thereupon offered it in evidence as a part of the cross-examination of the

respondent, and it was admitted without objection. The respondent was bound by the provision referred to, and above set out, which limited the responsibility of the appellant under any guarantee, expressed or implied. A provision of non-warranty may be operative when used in letterheads. 55 C. J. 711.

Under the disclaimer of warranty, there does not appear to be any substantial difference between this case and that of *Larson v. Inland Seed Co.*, 143 Wash. 557, 255 Pac. 919, 62 A. L. R. 444, where it was held that a printed tag attached to the bags in which the rye purchased was shipped, reciting that there was no warranty, expressed or implied, absolved the seller from liability upon any implied warranty.

The cases of *Seattle Seed Co. v. Fujimori*, 79 Wash. 123, 139 Pac. 866, and *Baxter v. Ford Motor Co.*, 168 Wash. 456, 12 P. (2d) 409, 15 P. (2d) 1118, 88 A. L. R. 521, are to the same general effect.

It may well be doubted whether there was any evidence in this case from which the jury could have found that the fish netting was not merchantable. The evidence in this case on the part of the respondent shows that the netting, if defective, was such as could not have been discovered by inspection, and therefore the defect, if any, was latent.

In *United States Fidelity & Guaranty Co. v. Western Iron Stores Co.*, 196 Wis. 339, 220 N. W. 192, 59 A. L. R. 1232, it is said:

"While it is the intention of the Uniform Sales Act to make the seller liable as a grower or manufacturer would be under like circumstances, it certainly cannot be the intention of the act that the seller of ordinary merchandise produced in quantity impliedly warrants that the goods are without latent defects. The seller warrants only that they are of the kind and character which he was to deliver under his contract. If as in this case it should be held that the seller warrants

against a defect not disclosed by over two and one-half years of use and discoverable only by careful testing, a burden would be cast upon the sellers of merchandise which would be unreasonable and intolerable. No such result could have been contemplated by the codification of the law of sales.''

It is said, however, that the appellant did not plead the provision referred to in the bill or invoice as limiting its liability. As above stated, this invoice was introduced in evidence as a part of the cross-examination of the respondent. It being in evidence, the pleading will be deemed amended, even after the case has reached this court on appeal. *Brady v. Frigidaire Sales Corp.*, 180 Wash. 472, 40 P. (2d) 166. Whether the provision limiting the liability could have been properly introduced in evidence under the general denial, it is not necessary here to inquire.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the action.

MITCHELL, TOLMAN, HOLCOMB, and BLAKE, JJ., concur.