[No. 31831.   Department Two.   January 24, 1952.]

RUTH B. JACKSON, *Respondent,* v. ALEX H. DOMSCHOT *et al.,* *Appellants.*[1]

*Edwards E. Merges,* for appellants.
*Kumm, Hatch & Cook,* for respondent.

[1]Reported in 239 P. (2d) 1058.

FINLEY, J.—Alex H. Domschot and Edith A., his wife, owned improved real estate in Seattle which they sold to Ruth B. Jackson under a real-estate contract for fifteen thousand five hundred dollars. An initial payment of twenty-five hundred dollars was made. The remaining balance of thirteen thousand dollars, together with interest, was to be paid in monthly installments of eighty dollars, or more, per month.

The real-estate contract prepared by respondent's attorney (exhibit A, attached to plaintiff's complaint) contains the following provision which gave rise to this controversy:

"Sellers shall have the privilege at any time of obtaining a mortgage on said premises *in the amount of the balance due under this contract,* provided that the monthly payments and rate of interest, computed on monthly balances, under any such mortgage shall not exceed the monthly payments or rate of interest due hereunder. *The purchaser agrees to join in any and all instruments necessary for the obtaining of such mortgage.*" (Italics ours.)

Alex Domschot is a contractor and builder. He apparently follows a not unusual practice of constructing a house by using his own funds, then selling it under contract. By prearrangement with the contract purchasers, Mr. Domschot places a mortgage against the property and obtains a loan on it. This enables him to get his money out of a construction job fairly promptly after he has found a purchaser able to make a sufficient down payment.

Ruth Jackson, purchaser in this case, had been informed at the time the parties discussed prices and terms that Domschot would have to refinance. Immediately after the purchaser made her down payment and went into possession, Domschot applied to the Equitable Savings & Loan Association of Seattle, hereinafter called Equitable, which agreed to lend eight thousand dollars upon the property, provided Ruth Jackson, the purchaser, would join in the execution of the following documents: (a) Promissory note for eight thousand dollars; (b) real-estate mortgage; (c) insurance agreement; (d) order for payment of funds.

Domschot demanded that Ruth Jackson execute each and every one of the legal instruments required by Equitable. She refused but was willing to execute any legal instruments necessary to secure a loan *for the full balance due under the contract,* which would have been an amount in excess of twelve thousand dollars. Her refusal was based upon her interpretation of the real-estate purchase contract. She claimed that it obligated her to execute documents necessary to enable Domschot to secure a loan in *the amount of balance due under the contract only;* and that, since the balance due was in excess of twelve thousand dollars and the loan proposed by Domschot was eight thousand dollars, no obligation on her part existed.

After Ruth Jackson's repeated refusal to execute the note and mortgage for eight thousand dollars and the refusal of Equitable to lend the money unless the documents were executed, Mr. Domschot served upon her a notice of intention to cancel the real-estate contract if she did not sign the documents by September 18, 1950. Shortly after the service of this notice and before the expiration of the time limitation therein specified, the present lawsuit was instituted by Ruth Jackson and an injunction was obtained by her preventing the forfeiture of the real-estate purchase contract.

In the course of the proceedings, after his demurrer to Ruth Jackson's complaint was overruled, Domschot filed an answer and a cross-complaint. He sought the forfeiture of the contract and damages because of plaintiff's alleged breach of contract, together with further relief.

The trial court concluded, first, that the language of the contract was perfectly clear that the amount of the mortgage was to be the amount of the unpaid balance; and second, that the note and mortgage required by Equitable and demanded by Domschot contained provisions which went beyond those necessary for such instruments in such cases.

Domschot and his wife have appealed.

We are in accord with the opinion of the trial court that the language of the real-estate contract in question is clear and not susceptible of interpretation. In *Buck v.*

*Equitable Life Assurance Society*, 96 Wash. 683, 687, 165 Pac. 878, we said:

" 'The amount due,' in the language of this clause, can mean no other sum than the amount due in law and fact."

Under the contract, Ruth Jackson's obligation was to enter into a mortgage agreement in an amount equal to the unpaid balance due under the contract, at whatever time Domschot proposed to have the mortgage executed. It is undisputed that the balance due under the contract was "in excess of $12,000." The mortgage demanded by Domschot was for eight thousand dollars. Such a mortgage does not come within the terms of the contract.

Appellants argue that the provisions in the contract should be interpreted in the light of the relation of the parties, their knowledge of each other, and the negotiations which preceded this contract. They construe the language in question to mean that appellants might borrow any amount up to the amount of the unpaid balance due on the contract and require respondent to join therein.

The law is well settled that oral testimony is not admissible to change the plain language of a written contract. The rule was stated by this court in *Buyken v. Ertner*, 33 Wn. (2d) 334, 341, 205 P. (2d) 628, as follows:

"It is apparent that the question with which we are here primarily concerned relates to the subject commonly known and referred to as the 'parol evidence rule.'

"Under that rule, which is well established at common law and obtains in this jurisdiction, parol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake. *Clise v. Scott*, 180 Wash. 207, 38 P. (2d) 1019; *Asher Bros. General Illuminating Co. v. General Illuminating Co.*, 193 Wash. 105, 74 P. (2d) 495; *Alaska Pac. Salmon Co. v. Matthewson*, 3 Wn. (2d) 560, 101 P. (2d) 606; *St. Paul & Tacoma Lbr. Co. v. Fox*, 26 Wn. (2d) 109, 173 P. (2d) 194; 32 C. J. S. 784, Evidence, § 851."

The parol evidence rule is not a rule of evidence, but is a rule of substantive law. *Andersonian Inv. Co. v. Wade*,

108 Wash. 373, 184 Pac. 327; 5 Wigmore on Evidence (2d ed.), § 2400, p. 236. Hence, evidence properly falling within the inhibition of the rule does not become admissible merely because it has probative value or is not objected to. *McGregor v. First Farmers-Merchants Bank & Trust Co.*, 180 Wash. 440, 40 P. (2d) 144.

■ We have consistently held that we cannot upon general considerations of abstract justice make a contract for the parties that they did not make for themselves. *Merlin v. Rodine*, 32 Wn. (2d) 757, 203 P. (2d) 683; *Chaffee v. Chaffee*, 19 Wn. (2d) 607, 145 P. (2d) 244, and cases cited therein.

■ The second phase of appellants' argument is to the effect that respondent was obligated to join in any and all instruments necessary for the obtaining of the mortgage; that this language is extremely broad and it means that she must join in the execution of any documents required by any mortgage lender. To the contrary, we believe that under the contract respondent was only obligated to execute documents that were *necessary* to obtain *a mortgage*—not the particular mortgage of Equitable, as demanded by appellants, but any mortgage. An examination of the note and mortgage which respondent was requested to execute reveals they contain several provisions and conditions not to be found in the executory real-estate contract. Our review of this matter prompts us to agree with the conclusion of the trial court that the documents submitted by the Domschots to Ruth Jackson for execution had "provisions therein beyond those necessary for the obtaining of the mortgage provided for in the contract" and "that the execution of all said documents was not necessary to obtain the mortgage loan provided for by the terms of said contract."

The judgment is affirmed.

MALLERY, HAMLEY, WEAVER, and OLSON, JJ., concur.