**ANDERSON et al. v. OWENS et al.**

No. 13313.

United States Court of Appeals
Ninth Circuit.

May 29, 1953.

Rehearing Denied July 7, 1953.

Davis & Renfrew, Anchorage, Alaska, for appellant.

Chadwick, Chadwick & Mills, Seattle, Wash., John E. Manders, Anchorage, Alaska, Faulkner, Banfield & Boochever, Juneau, Alaska, for appellees.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

The Owens partners bought a tug from the Anderson partners. This suit was for breach of warranty of the condition of the tug. The dealings leading up to the contract of sale and purchase took place at Seattle, Washington, although all the parties were residents of Alaska. The senior Anderson and A. E. Owens carried on the negotiations. Anderson had brought the tug to Seattle for repairs. It had been purchased a year previously as a war surplus vessel. He met Owens at Seattle and negotiations followed which are described in the findings of the trial court as follows:

"7. J. C. Anderson stated that the vessel was in fair condition with the exception that the crankshaft pin for No. 5 cylinder was scored and that the forefoot or the stem was damaged from striking a log on the trip to Seattle, but that the vessel did not leak. Anderson further stated that the vessel could be put in first class shape for $5,000.

"8. The defendants offered to sell the vessel to the plaintiffs for $25,000 in its then condition or for $30,000 repaired.

"9. On April 1, 1947, A. E. Owens, on behalf of the plaintiffs, agreed to purchase the vessel for $25,000 and elected to make his own repairs.

"10. A written agreement was executed on April 1, 1947, but the agreement did not refer to the condition of the tug."

By way of conclusions the court found that "The defendants made express warranties in regard to the condition of the vessel T. P. 100"; that the plaintiffs, appellees here, were induced to purchase the vessel in reliance thereon, and that the warranties were breached and the plaintiffs damaged thereby in the sum of $24,478.86.

The evidence shows that after preliminary negotiations between Anderson and Owens, both parties went to the office of Owens' attorney at Seattle and an agreement in writing was drawn and executed. With respect to this Owens testified as follows: "Q. Did you eventually make any agreement in regard to the purchase of this boat? A. Later on we did. We made an agreement to purchase the boat for twenty-five thousand dollars; five thousand dollars cash, and two thousand dollars a month until the balance was paid off. Q. Was that agreement reduced to writing? A. It was." The agreement so drawn and executed is a complete and formal one. It states the desires of the parties to sell and purchase the boat; that Anderson had not yet received the bill of sale, but that delivery of the appropriate documents is to be made as soon as the bill of sale has been procured. It describes the vessel with particularity; states the purchase price; provides for a down payment of $5000, and subsequent installments of $2000 per month plus interest; it ar-

ranges for the execution of a new note constituting the balance of the purchase price to be secured by a mortgage upon the vessel, the note and mortgage to be substituted for a then existing mortgage; it provides for insurance upon the vessel with loss payable provisions for the benefit of the holder of the note and mortgage; for immediate delivery of the boat, and for deposit of the down payment of $5000 in escrow with Owens' attorneys, the same to be delivered upon receipt of the Government bill of sale. The agreement contains no warranties with respect to the condition of the boat.

Anderson claims that the sale was without warranties; that he sold the boat "as is"; that he left it to Owens to say whether he would buy the boat in its then condition for $25,000, or whether he would pay $30,000 with an agreement by Anderson to repair it, and that Owens chose to pay the $25,000 and make his own repairs. It was understood by both parties that some repairs were required. The claim of Owens was that in the negotiations which preceded the execution of the written agreement, Anderson made the warranties as to the extent of the required repairs. It is these warranties which the trial court held were breached.

It is obvious that the primary question to be determined is whether the written agreement between the parties constituted an integration of their agreement so that the parol evidence of prior negotiations, upon which the court based its findings of warranties, was immaterial and inadmissible. Appellees say that the appellants are in no position to make any such contention for the reason that the evidence of the negotiations which preceded the execution of the writing came in without objection and hence these matters were before the court and judgment can be based thereon.

It is conceded by both parties that the transaction in question is covered by the law of Washington where the negotiations took place and the agreement was made. While the law of that State upon the point has not always been clear, yet the later decisions of the Supreme Court of Washington hold that the parol evidence rule is not a

rule of evidence but one of substantive law, and hence where that rule applies, the terms of a written agreement may not be altered or modified by parol evidence of prior or contemporaneous oral negotiations, whether that evidence be objected to or not. Jackson v. Domschot, 40 Wash.2d 30, 33, 239 P.2d 1058, 1060;[1] Preugschat v. Hedges, Wash. 251 P.2d 166.

■ We proceed then to inquire whether the parol evidence rule must be applied here, and whether the trial court could properly find that there were express warranties in the sale of the boat. The question is whether in the circumstances, the prior negotiations between the parties were embodied, that is, integrated in the writing. That depends upon the disclosed intent of the parties and is a question for the court.

■ In the case of Sears, Roebuck & Co. v. Nicholas, 2 Wash.2d 128, 97 P.2d 633, at page 635, that court, after a discussion of the decisions of other courts, proceeded to make the following statement of the test of integration: "While this doctrine has been very generally followed, some courts have held that the intent of the parties controls, and that in determining their intent, the nature of the alleged oral agreement not embodied in the contract, and the matter of whether or not such an agreement would ordinarily have been embodied in the written instrument had the parties in fact made such an agreement, are entitled to great weight. In 3 Williston on Contracts 1834, § 638, is found the following: 'The test of admissibility is much affected by the inherent probability of parties who contract under the circumstances in question, simultaneously making both the agreement in

writing which is before the court, and also the alleged parol agreement;' * * *. In the case of Thompson [Thomson] & Stacy Co. v. Evans, Coleman & Evans, 100 Wash. 277, 170 P. 578, 580, it was held that a written contract for the sale of grain sacks was not ambiguous or incomplete merely because it did not by its terms designate the place whence the sacks were to come, it being held that parol evidence that the sacks were to be shipped from British Columbia was inadmissible. In the course of the opinion, this court said: 'Moreover the parties to every written contract, which, on its face, imports a complete legal obligation, are presumed to have introduced into [it] every material item and term. Silence on a point which might have been embodied does not open the door to parol evidence to include it.'" The Washington court thus made it clear that there may be integration such as to exclude parol evidence of prior negotiations upon certain matters even although the writing is silent upon those matters.[2]

■ Thus it is the view of that court that in determining whether, after a writing has been executed, prior oral negotiations may be proven, the question is whether the situation is such that in the natural course of things the parties would include in the writing what was said during their prior negotiations if they intended the oral statements to be a part of the bargain. In the case of Logsdon v. Trunk, 37 Wash.2d 175, 222 P.2d 851, 854, the Washington court quoted with approval the following language which the Supreme Court of Oregon in turn had quoted from Jones on the Construction of Contracts:

1. "The parol evidence rule is not a rule of evidence, but is a rule of substantive law. Andersonian Inv. Co. v. Wade, 108 Wash. 373, 184 P. 327; 5 Wigmore on Evidence (2d Ed.) § 2400, p. 236. Hence, evidence properly falling within the inhibition of the rule does not become admissible merely because it has probative value or is not objected to."

2. In this respect the Washington court was adopting the view expressed in Seitz v. Brewers' Refrigerating Mach. Co., 141 U.S. 510, 517, 12 S.Ct. 46, 48, 35 L.Ed. 837, as follows: "Whether the

written contract fully expressed the terms of the agreement was a question for the court, and since it was in this instance complete and perfect on its face, without ambiguity, and embracing the whole subject-matter, it obviously could not be determined to be less comprehensive than it was. And this conclusion is unaffected by the fact that it did not allude to the capacity of the particular machine. To hold that mere silence opened the door to parol evidence in that regard would be to beg the whole question."

" 'The test of the completeness of the writing, proposed as a contract, is the writing itself. If this bears evidence of careful preparation of a deliberate regard for the many questions which would naturally arise out of the subject-matter of the contract, and if it is reasonable to conclude from it that the parties have therein expressed their final intentions in regard to the matters within the scope of the writing, then it will be deemed a complete and unalterable exposition of such intentions.' "

We think that when these rules are considered in the light of the circumstances of this case, and the rather elaborate and complete writing which the parties executed, that there was here such an integration; that the parties must look to the writing alone; and that an action cannot be predicated upon these prior oral negotiations. Cf. Wigmore on Evidence, 3d ed., § 2434, note 1.

It is apparent that the case was tried below upon the theory that plaintiff was entitled to recover upon express warranties of quality or condition. The trial court adopted this theory and its findings and conclusions disclose that liability was predicated upon the existence of express warranties, for the court so described them. Upon this appeal, however, appellees argue that the judgment may be sustained upon the theory of an implied warranty. They base their argument in this respect upon the following provision of the statute which Washington has adopted from § 15 of the Uniform Sales Act, Remington Revised Statutes Wash., § 5836-15: "Implied warranties or conditions as to quality or fitness. Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. * * *"

It is true that Owens testified that during the negotiations he told Anderson that he was engaged in logging operations and wanted the tug to tow logs, and the trial court so found. However, before an implied warranty may arise under the section quoted, it must appear not only that the buyer makes known to the seller the purpose for which the goods are required, but it must also appear that the buyer "relies on the seller's skill or judgment". Puratich v. Pacific Marine Supply Co., 184 Wash. 531, 535, 51 P.2d 1080, 1082.[3]

The trial court found that "A. E. Owens had been engaged in the logging business for many years during the course of which he had bought and operated boats." No finding whatever was made as to whether in the circumstances of this case Owens relied upon Anderson's skill or judgment. The inquiry is whether notwithstanding this lack there is evidence in the record upon which such a finding might be based.

Clearly this is not the typical case in which the prospective purchaser who requires machinery or other personal property for a special purpose advises the seller of his needs and requests the seller to furnish equipment that will meet his requirements. Such a case was Long v. 500 Co., 123 Wash. 347, 212 P. 559.[4] Here

---

3. "It will be observed that under the first subdivision there is no implied warranty of fitness for a particular purpose unless that purpose is made known to the seller and the buyer relies on the seller's skill or judgment. In the case now before us, the evidence shows that the purpose for which the netting was sold was made known to the appellant, the seller. But there is no evidence from which it can be inferred that the respondent relied upon the seller's skill or judgment. In fact, his testimony was in effect, to the contrary. If the respondent did not rely on the seller's skill or judgment, he has not fulfilled the requirements necessary to make a cause of action on the ground of implied warranty of fitness for a particular use."

4. The buyer in that case needed a truck for hauling logs. The seller selected and furnished a 3½ ton truck which proved inadequate and broke down.

the parties dealt with respect to a definite, a single, specific boat. There is no evidence whatever that Owens relied upon Anderson's skill or judgment to pick out this particular tug. If anything, the evidence would tend to show that Owens, long in the logging business, and the previous owner and operator of a number of boats used for that purpose, was relying on his own skill and judgment. Of course he claims that he was relying upon what Anderson said about the condition of the motor, the driveshaft, and the stem, but those are matters relating to the alleged express warranties which, as we have seen, cannot be relied upon here.

■ The contrast between the facts of this case and those of Long v. 500 Co., supra, is well stated in American Player Piano Co. v. American Pneumatic Action Co., 172 Iowa 139, 154 N.W. 389, 393, as follows: "The distinction between the cases in which a warranty is implied and where it is not implied is that in one case a person buys a distinct thing, an exact article, and gets the thing he bargained for. He cannot complain that it does not accomplish the purposes for which he purchased it, although he communicated that purpose to the seller. In such cases he takes his own risk as to the fitness of the thing for the intended purpose, and no warranty is implied. This rests upon the thought that no one can complain of another, or charge him with fault, who gives to him the exact thing which he bargained to give, although it is not fit for the purposes for which he bought it." The same distinction was recognized in Long v. 500 Co., supra, where the court in explaining certain Washington cases applying the rule just quoted from the Iowa case, said, 212 P. at page 560: "These cases, it is true, sustain the general principle that, where a known, described and definite article is ordered of a dealer, who is not the manufacturer of the article, and an article of the known and described kind is delivered, there is no warranty that the article supplied is suitable for the purpose for which the buyer intends to use it, even though the buyer may have made known to the dealer, at the time he gave the order, the intended

use". We think that the record will not sustain a finding to support an implied warranty of the kind claimed here.

Since we are of the view that the appellees' claim cannot be sustained upon the basis of either an express or implied warranty, the judgment must be reversed.

■ The case has one tag end. The court, in addition to awarding appellees damages for breach of warranty, awarded damages in the sum of $500 for wrongful detention of a lifeboat. No fault can be found with that part of the judgment and to that extent it must be affirmed.

The judgment is reversed and the cause remanded to the court below with directions to modify the judgment so that the same will award plaintiffs the sum of $500 only. Appellants shall recover their costs upon this appeal.