## John S. Noel Company v. Theobald, et al.

(Decided December 7, 1926.)

### Appeal from Grant Circuit Court.

1.  Evidence—In Absence of Fraud or Mistake, Conversation Between Parties when Contract was Executed Cannot be Shown to Add to or Subtract from it.—In absence of allegation of fraud or mistake,

what was said between parties when written contract was executed cannot be shown to add to or subtract from the writing.

2. Evidence—Parol Evidence of Statements of Agent at Time of Executing Contract for Lighting Plant Held Incompetent, in Absence of Allegation of Fraud or Mistake.—Parol evidence as to statements of agent at time of executing contract for purchase of lighting plant held incompetent, in absence of allegation of fraud or mistake in written contract.

3. Evidence—In Action on Written Sale Contract, Answer Alleging Parol Statements of Plaintiff's Agent at Time of Execution, but Not Alleging Fraud or Mistake, Held Demurrable.—Where answer to action on written contract alleged parol statements by agent at time of executing contract, without allegation of fraud or mistake, demurrer thereto should have been sustained.

4. Sales—Implied Warranty on Sale of Lighting Plant is Only that it is Reasonably Suitable to Perform Ordinary Work.—Implied warranty of fitness of lighting plant is only warranty that plant is reasonably suitable to perform ordinary work of lighting plant and cannot be construed as warranty that plant will give sufficient light for the needs of nearsighted man, unless so expressed in contract.

C. C. ADAMS for appellant.

L. M. ACKMAN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

G. V. Theobald and wife signed and delivered to the John S. Noel Company the following order:

"Nov. 8, 1922.

"John S. Noel Co., Grand Rapids, Mich.
Branches—Chicago, San Francisco.

"Please ship to me at Williamstown, county Grant, state Kentucky, one of your 100-light Noel improved pit generators, fixtures, etc., as listed below, f. o. b. Grand Rapids, pipe my store which will be ready any time and I will pay you $42.00 in cash upon installation and the balance, $338.00, by my notes, months negotiable note when presented by the installer. 4-8 & 12 months without interest. (Here follow dimensions of the store and description of lighting plant.)

"GUARANTEE: In accepting this order the John S. Noel Company guarantees the generator and fixtures furnished to be of first class material and work-

manship, and if the generator or fixtures should be found to be defective in workmanship or material within ten years from this date, the purchaser agrees to notify the company by registered mail, addressed to its office at Grand Rapids, Michigan, and ship the company the defective parts, prepaid, after which defective parts will be replaced by the company, free of charge, f. o. b. factory.

"It is agreed further in accepting this order the company warrants the generator furnished to be automatic in action, and of good material and workmanship, and that it is on the permitted list of the National Board of Fire-Underwriters.

"No agreement is binding unless expressed herein.

"It is agreed that this order my be cancelled on payment of one-half contract price as liquidated damages before removing goods from the railroad."

The order was accepted; the plant was shipped and installed. Theobald paid the first payment of $42.00, but failed to pay the remainder of the price. This suit was brought by the company on the contract to recover therefor. The defendants by their answer alleged that at the time they bought the plant the plaintiff's agent represented that the plant when properly installed would furnish abundant and sufficient light to light up their entire storehouse in a perfectly satisfactory manner, and guaranteed that the light could be operated on seven drums of carbide per annum, but after the plant was installed and put in operation they discovered that it would not light the building as represented, and that it cost nearly seven times as much to operate the plant as the agent guaranteed it would cost and that the plant failed to light the building in a satisfactory manner even with the most extreme cost; that after giving the plant a test they tendered it back to plaintiff and plaintiff refused to accept it; that the agent's statements were false and were a fraud upon their rights. By an amended answer they pleaded that G. V. Theobald was a practicing pharmacist at Williamstown, Kentucky; that the plaintiff's agent called upon him at his store and knew full well the size of same, the purpose for which a lighting system was desired and the fact that he had defective eyesight which required a bright light in order that he

might read the labels on the bottles and that defendants possessed little or no knowledge of lighting systems of this character. They also alleged that Theobald ordered the lighting system relying upon the judgment of the company's agent in furnishing a system suited to his requirement. The plaintiff demurred to the answer. The demurrer was overruled. The plaintiff then filed a reply denying the allegations of the answer and pleading that the writing was the only contract it made; that its agent had no authority to make any other contract than that set forth in the writing. The case came on for trial. The defendants testified that the agents made representations, as set out in their answer, and that the lighting system failed to give sufficient light in the store. The plaintiff objected to the evidence. Its objections were overruled, and at the conclusion of the evidence the court instructed the jury in substance that they should find for the plaintiff, unless the lighting plant would not light the store as represented by the agent, and the statements of the agent were false and the plant was inadequate to perform the work for which it was sold by the plaintiff and bought by the defendants, and if they so believed they should find for the defendants. The jury found for the defendants. The plaintiff's petition was dismissed and it appeals.

No rule is better settled than that oral proof cannot be substituted for the written evidence of any contract which the parties have put in writing, for the writing is the only repository and appropriate evidence of their agreement. (1 Greenleaf on Evidence, p. 87.) In the absence of the allegation of fraud or mistake what was said between the parties when a written contract was executed cannot be shown to add to or subtract from the writing.

"When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different

contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected. In other words, as the rule is now more briefly expressed, 'parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.' '' 1 Greenleaf on Evidence, section 275.

There was here no allegation of fraud or mistake in the written contract. So far as appears it was fairly made. The parol evidence was incompetent to add to the contract stipulations not contained in it. The plaintiff's objection to all the evidence as to what was said by the agent should have been sustained. The demurrer to the answer should also have been sustained, as there was no allegaiton of fraud or mistake in the answer. If the defendants wished to make a contract with plaintiff, as set out in their answer, they should have incorporated these terms in the writing which they signed, so that the plaintiff when it came to act upon the order would know what obligation it was incurring. The law requires parties when they put their contracts in writing to use ordinary care to know what they are signing, and if they failed to make the writing express the real contract the fault is theirs, unless they were imposed upon by fraud or misled by mistake. The business of the world is done on written contracts and any other rule would destroy the confidence in written contracts which is essential to the transaction of business. Morris v. Roberson, 137 Ky. 841; Carter v. Hall, 191 Ky. 75; Sanders v. Wender, 205 Ky. 422; Spottswood & Son v. Lafayette, &c., Garage, 207 Ky. 477.

It is also insisted for appellee that there was an implied warranty which was broken. The rule as to implied warranties is thus stated in 24 R. C. L., p. 178:

"Implied warranties arise by operation of law, and they exist without any intention of the seller to create them. They are conclusions or inferences of law, pronounced by the court, on facts admitted or proved before the jury. As has been said: 'Implied warranties do not rest upon any supposed agreement in fact.' They are obligations which the law raises upon principles foreign to the actual contract-principles which are strictly analogous to those upon which vendors are held liable for fraud. . . .

The fact that the contract of sale is evidenced by a writing does not preclude the implication of a warranty not inconsistent therewith. On the other hand, a warranty will not be implied in conflict with the express terms of the agreement, it being well settled that the seller may by express provision exclude the implication or importation therein of any warranties on his part, and ordinarily no warranty will be implied where there is an express warranty relating to the same matter.''

It has been held by this court that where there is an express warranty there is no implied warranty; but these were cases where the express warranty covered the whole subject, as in Forsythe v. Russell, 148 Ky. 490. On the other hand, it has been held in a number of cases that where a dealer sells an article which he produces to be applied to a particular purpose there is an implied warranty that it shall be reasonably satisfactory for the purposes to which it is to be applied. International Harvester Co. v. Bean, 159 Ky. 842; Cumberland Grocery Co. v. Hardwood-Barley Mfg. Co., 184 Ky. 70. Following this rule in Downey v. Price Chemical Co., 204 Ky. 103, where the contract expressly provided against any warranty, the court said:

''It is vigorously insisted that, since the contract not only did not contain an express warranty, but expressly declined to warrant, there should have been a peremptory instruction in favor of plaintiffs on the issue as to the character of commodity proposed to be furnished in fulfillment of the contracts. If the article actually shipped and proposed to be shipped in fulfillment of the contracts was of the character and description above given of 'unground garbage tankage' there would be much force in this contention although it was inferior in quality. However, there is no complaint in this case about the quality, but the entire defense rests upon the contention that plaintiffs proposed to ship in fulfillment of the contracts an entirely different article from that purchased; and it is everywhere the law that one may not comply with his contract in selling a sawmill by description by furnishing to the purchaser a sewing machine, or perform a similarly obtained contract for the sale of an overcoat by delivering or offering

to deliver an umbrella. He would be required, in the illustrations, under an implied warranty to furnish the kind of article sold, and to ship to his purchaser a sawmill or overcoat, however inferior in quality they might be. 35 Cyc. 401-2, and 24 R. C. L. 171-2, paragraph 445, and cases in note 19. It is also the law that in the absence of a stipulation to the contrary, there will be an implied warranty that the described article, where the sale was made by description, as it was here, is reasonably suitable for the purposes for which it was bought, but the contracts here involved relieved plaintiffs from the obligations incurred by any such warranty, but did not relieve them from the implied warranty that the article sold was of the particular commercial kind or character which its description indicated."

In Paducah Hosiery Mills Co. v. Proctor & Schwartz, 210 Ky. 806, the court, again applying the rule, said:

"It clearly appears that the vendor sold the machines well knowing the specific purpose for which they were intended, and it is earnestly insisted that this being so there is an implied warranty that the machines were reasonably adapted to that purpose. This is ordinarily the rule. Cumberland Grocery Co. v. Harwood-Barley Mfg. Co., 184 Ky. 70, 211 S. W. 409. But in this case there was an express warranty as to what the machine would do. It was guaranteed to at least double the production of an operator over the quantity turned out by the same operator when boarding by the method of using wooden boards. The quantity of work that the machine would do being expressly guaranteed in writing, there was no implied warranty that it would do more, and the vendor cannot maintain that it satisfied the contract if it did less. It was also expressly guaranteed that all the machinery, materials and supplies should be of good and suitable quality and that all work should be performed in a good and workmanlike manner. The parties having put their contract in writing, the writing supersedes all the previous oral negotiations."

In this case the express warranty is only as to the materials of which the plant is constructed and as to the lighting plant being satisfactory to the insurance board.

There is nothing in the contract excluding the implied warranty of fitness. But the implied warranty of fitness is only a warranty that the plant is reasonably suitable to perform the ordinary work of a lighting plant. There is no implied warranty when an order like this is sent to a manufacturer that the lighting plant will give a light sufficient for the needs of a nearsighted man, unless this is expressed in the contract. If the purchaser wishes to require this he should specify this in his order which the manufacturer is to fill. There was neither allegation nor proof that the lighting plant furnished appellees was not reasonably sufficient to furnish the light ordinarily required in the room specified in the contract. Beyond this there was no implied warranty. Notes 43 A. L. R. 649.

Appeal granted, judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.