## Day Pulverizer Company v. Rutledge.

(Decided May 12, 1931.)

EVERETT S. PENICK for appellant.

O. P. ROPER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appellant, Day Pulverizer Company, sold the appellee, J. W. Rutledge, a rock crusher and elevator for $1,115. He paid $400 in cash and gave three notes for the balance. When sued on the notes, Rutledge counterclaimed and asked their cancellation and a recovery of the cash paid. He also prayed for $225 damages. He asserted a breach of warranty and misrepresentation as to what the machinery would do. The company denied that there was any warranty or misrepresentation, and alleged that the machinery was constructed and made of good durable material and in a workmanlike manner and was entirely suitable to perform work of the character in which the defendant was engaged, but that he did not operate the machine at the right speed nor feed it in the proper manner, and that whatever trouble he had had with the machinery was the result of improper operation. It averred that it had offered to adjust the machinery, but the defendant had refused to allow it to do so. The verdict of the jury was for the defendant, except as to his claim for damages, and the company appeals from the judgment.

The contract of purchase was made by correspondence. The appellee sent an inquiry on a form furnished by the company, in which he stated, ''I expect to grind for Todd County roads 5000 cubic yards of rock from 2 inches down;'' and also, ''I want to put out from 50 to 60 cubic yards of crushed stone a day.'' The company recommended its No. 2 model E pulverizer. Rutledge then advised the company that he had closed the contract for the 5,000 cubic yards of crushed rock and was ready to accept its proposition, provided it would make him satisfactory terms. The appellant quoted him prices and terms on that machine ''fully equipped with proper size spacers and pulley, ready to run,'' and he accepted the offer.

The machinery was shipped and installed, but from the start it made practically nothing but dust, and the elevator did not raise the crushed material to the loading bin, and after a few minutes of operation broke down.

The company, being notified, sent its representative to Todd county, and he installed larger spacer bars and made some adjustments. The crusher (or pulverizer, as the company called it) was again started under his supervision and produced about 40 per cent. dust. The broken rock was not uniform. The elevator broke down in a few minutes, and after some more replacements and renewed operation again broke. The factory representative stated he could do nothing more, but would send some larger buckets and stronger chains. These articles were sent and some suggestions made as to the pit from which it seems the crushed material was lifted. Rutledge put in the new parts, but his experiences were the same as before. He notified the company by letter and by telephone of the results, and advised its officer that he would be compelled to get another machine and would load the machinery purchased from his company on cars when given shipping instructions. The county officers testified that they had to reject the rock which had been crushed by this machinery as it did not meet the terms of appellee's contract.

The testimony of the company's representative does not differ materially from the evidence introduced by the appellee, as above outlined, except that he says the crusher worked all right while he was there and that the chief complaint was as to the elevator. The appellee's letters to the company did not go into detail as to his troubles with the machinery, and this is suggested as contradiction of his testimony. They were, however, sufficient to inform it of the unsatisfactory operation. The company claimed that the production of so much dust was because the machine was operated too fast and because it was not properly adjusted. It offered to send another factory representative to make that adjustment, but did not do so, as Rutledge did not accept the offer.

It is insisted that no fair trial was given the machinery, and that Rutledge could not, and did not in law, rescind the contract. The former was a question of fact for the jury, and the law by which the fact was to be measured was embodied in the instructions.

It is claimed also that there was no warranty other than as to the quality of material. The company's catalogue of its products contains this guaranty: "The Day Pulverizer company, Inc., guarantees the material and workmanship entering into the Day Pulverizer for a period of one year from date of purchase, and will replace

any defective broken part free of charge f.o.b., Knoxville, Tennessee, provided defective parts are returned to us, carriage charges prepaid.''

In addition to this express warranty, there is an implied warranty in the sale of machinery of this character that the article sold is reasonably suited for the use intended. If it fails to accomplish that purpose, there is a breach of the contract. Both the express and implied warranty may be relied on as was done here. John S. Noel Co. v. Theobald, 217 Ky. 28, 288 S. W. 1031; Marbury Lumber Co. v. Stearns Manufacturing Co., 107 S. W. 200, 32 Ky. Law Rep. 739; J. B. Colt Co. v. Carrier, 227 Ky. 754, 14 S. W. (2d) 170. This judicial construction of warranties is now incorporated in the Uniform Sales Act. Section 2651b-15, Kentucky Statutes, is directly involved and is a part of every selling contract. It is in part as follows:

"Subject to the provisions of this act or any statute in that behalf, there is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. . . .

"(6) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith.''

In this case the buyer expressly made known to the seller the particular purpose for which he required the machinery and accepted its recommondation as to what he needed. The machinery failed to do the work, according to the preponderance of the evidence, and the jury was justified in finding for the purchaser. Therefore the claim of the appellant for reversal of the judgment upon the ground that it was entitled to a peremptory instruction or entitled to have the verdict set aside because flagrantly against the evidence cannot be sustained.

Criticism of the instructions given are rested upon the same ground; that is that they assumed as a fact that

there was a warranty when there was no proof of it. The court instructed the jury in substance that, if they believed that representations and a warranty had been made as to the machinery being free from defects and was suitable and capable of performing the work for which it was purchased, that the defendant had relied on the representations and warranty and was thereby induced to purchase the machinery, that the representations were untrue, that it was without value for the purpose for which it was purchased, and that the defendant, within a reasonable time after discovering it, had offered to return the machinery to the planitiff, the jury should find for the defendant. This instruction was at least as favorable to the appellant as the record justified. In another instruction the jury were advised, in effect, that, if they believed the machinery was not suitable for crushing rock of the size of two inches and down and elevating same into bins for loading, due to defects in their construction or adjustment, they should find for the defendant, unless they further believed that the defendant, after discovering the defects, notified the plaintiff thereof and the plaintiff offered and was able to remedy those defects within a reasonable time and the defendant refused to permit it to do so, and that, if the jury so believed, they should find for plaintiff. It is argued that the instruction was improper because of the assumption that there was a warranty, and because it required the jury to believe that the company not only offered to remedy such defect after the defendant notified it, but that it was able to remedy the defects in a reasonable time. It is said that the jury should have been instructed in substance that, although there were defects in the machinery, they should find for the company unless after notice the plaintiff failed to repair such defects without fault on its part. We cannot agree with the contention of prejudicial error. According to the evidence of the appellee, the company had been given such an opportunity and had failed to rectify the unsatisfactory operation and to remedy the defects. The jury may have believed from this evidence that they could not do so. The evidence for the company was that, after Rutledge had advised it of his purpose to purchase another machine, it offered to send its representative back to remedy the defects, and he refused to permit it.

Perceiving no error, the judgment is affirmed.