## SALT LAKE HARDWARE COMPANY v. M. B. CONNELL et al.

(No. 1835; June 19, 1933; 34 Pac. (2d) 23)

The cause was submitted for the plaintiff and appellant on the brief of *Louis Kabell, Jr.* of Evanston.

The cause was submitted for defendants and respondents on the brief of *Ivan S. Jones,* of Kemmerer.

RINER, Justice.

The Salt Lake Hardware Company, a corporation, as plaintiff, brought an action in the District Court of Uinta County against Mrs. M. B. Connell and Massae Brothers, as defendants, and, being unsuccessful in the

litigation there, has brought the judgment, rendered in the case, here for review by direct appeal.

Summarized, the facts appear to be these: The defendant, Mrs. M. B. Connell, for some time during the year 1929, had been engaged in the business of producing crude oil from wells located at Spring Valley in Uinta County, and was desirous of obtaining an oil still for use in refining the product. With this end in view, she and her eldest son, J. A. Massae, prior to April 24 in the year aforesaid, went to Salt Lake City, Utah, and made arrangements with the Western Heating and Sheet Metal Works, hereinafter generally referred to as the "Metal Works," through Wm. W. Edwards, its President and managing officer, for the construction of such a device. Under date of April 24, 1929, he sent Mrs. Connell, whose given name is Drusilla, at Spring Valley, Wyoming, the following letter:

"In accordance with our conversation, we will build and furnish you with one upright oil still of 50 barrels capacity, all complete with ladder, platform, cleanouts, outlets, bottom part for oil burners, (but no burners), etc., for the sum of $1200.00, f. o. b. Salt Lake City. Terms of payment one-third cash, balance within 90 days. All labor and material guaranteed to be strictly first-class in every respect. In accordance with our agreement, work has already been started on this job and same will be hurried all possible to completion.

"This letter is being sent you in duplicate and we ask that you please sign and return one copy to us which will constitute a contract between us.

"Please pardon delay in getting this letter to you.

   Yours very truly,
   Western Heating & Sheet Metal Works,
   By Wm. Edwards, President & Manager."

The duplicate copy referred to in this communication was returned to him endorsed under the typewritten word "Accepted" with Mrs. Connell's signature, "Drusilla Connell." The still was, in due course, com-

pleted and, with other material purchased by or for Mrs. Connell for use in connection therewith, was delivered, apparently during the latter part of the month of May or the first part of the month of June, 1929, and immediately set up by J. A. Massae for operation at Spring Valley.

As shown by the letter above quoted, the contract price for the still was $1200; the additional material purchased increased the bill to the total amount of $1752.36. Mrs. Connell made cash payments on the account totaling $475, and she was also credited with an allowance of $214.30 made by Mr. Edwards because of old asphalt oil left in the still when delivered by the vendor which damaged the new oil placed in it when it was undertaken to be put in operation by the purchaser. After applying the cash payments and this credit item, there remained unpaid on the account the sum of $1063.06, the amount involved in this litigation.

It appears that J. A. Massae, who testified to having had considerable experience in construction work of various kinds, including steam-fitting, took about a month to erect the still after it had been delivered, and then tried to operate it. He stated, as a witness on the stand for the defendants, that he was never able to produce any gasoline with the still despite repeated trials extending over a period of several weeks. It seems that Mr. Edwards was promptly advised of the inability of the still to function, and, according to Mr. Massae's testimony, Edwards said, "I will make it work. I will put a man on it to put a larger pipe on it." This was undertaken to be done by sending one of the vendor's workmen to Spring Valley with what was called a "steel dome" which was affixed to the still but, after the alterations were made and it was again undertaken to be operated, no results could be obtained from the device, except that on the first

trial with the still about two-thirds full of crude oil, only about four or five gallons of "the lightest vapor that comes off the gas before it ever starts boiling," as Mr. Massae stated, was obtained. In erecting the still, Massae testified that he "did everything" Mr. Edwards told him to do.

About this time, the still was examined by the Wyoming State Oil and Gas Inspector, who ordered that it be not used on account of its being an impractical and wasteful device. It appears, also, that the Inspector thereafter made another examination of it but declined to change his order. On the trial, he testified, among other things, that:

"Why we found that there wasn't a large enough fire box to heat the oil contained in the still if it was full, and thereby distill over the naptha content to make the gasoline; that the radiation of the heat units would be so great that when the oil raised to the top--, the heated oil, you see it heated near the fire box and then raised to the top of the still, and was then so cool that it wouldn't give enough gasoline production to warrant the operation of the still for that purpose.

"They might get a little heavy gasoline, quite a lot of kerosene, and gas oil, and then the residue would have practically no value to it. They couldn't market it at all."

This action taken by the State Oil and Gas Inspector was communicated to Edwards, and he was finally notified by Mrs. Connell that "he could come and get" the still "because we couldn't use it." Additional facts appearing in the record and necessary to be considered will be subsequently herein mentioned in connection with the discussion of the several questions submitted.

Under date of August 24, 1932, the Metal Works assigned the account aforesaid to the plaintiff and, the following month, action was commenced by it to recover the amount claimed to be due, as above set forth. The issues in the case were made up and a trial to the

court resulted in a general finding in favor of the defendants and against the plaintiff, and it was ordered that the defendants "go hence without day and recover from the plaintiff their costs" expended in the cause. To reverse this action of the district court, this appeal is prosecuted.

Plaintiff's petition in substance alleged, in the first paragraph thereof, its corporate existence under the laws of the State of Utah; in its second paragraph, that the defendants were indebted to the Western Heating and Sheet Metal Works, also a Utah corporation, in the sum of $1063.06, on account for merchandise sold and delivered by the corporation last mentioned, to the defendants at their request, and for which they promised to pay (copy of the account being attached and made a part of the pleading) ; and, in its third paragraph, that said account was, before the commencement of the action, assigned to plaintiff by written instrument, copy of which was also attached and incorporated therein by reference; it was finally averred, in the fourth paragraph of the petition, "That no part of said sum of One Thousand Sixty Three and 06/100 ($1063.06) Dollars has been paid and the whole thereof is due and owing from Defendants to Plaintiff."

The defendants filed their answer to this petition wherein they admitted its paragraph numbered (1.). As to paragraph 2, they denied each and every allegation "therein contained, except as hereinafter set forth"; alleging that they had no knowledge concerning the matters set out in paragraph 3, on that ground they denied its allegations, also; the answer then states that they "admit paragraph 4 of said complaint," and deny "each and every allegation therein contained not herein specifically admitted." The answer concluded by pleading as affirmative defense, to state it briefly, that the Metal Works warranted the oil still purchased

by defendants from it "to be in all respects fit and proper for such use, and adaptable to the refining and distilling of gasoline from crude oil"; that the still was unsound and would not function; that the Metal Works was informed of this fact as soon as it was discovered, and, although it endeavored to remedy the defect, yet it failed to do so. Defendants prayed that plaintiff's pleading be dismissed and for their costs. Plaintiff, in due time, filed a reply denying the affirmative matter thus set forth.

Subsequently, and on January 16, 1933, plaintiff filed a motion to strike out all of the affirmative defense alleged in the answer, as aforesaid, on the ground that it was irrelevant, redundant, and immaterial matter, and for judgment on the pleadings because of the admission by the defendants' answer of the allegations contained in the fourth paragraph of plaintiff's petition, as described above. Plaintiff, also, by motion, sought leave to amend its petition by alleging that Massae Brothers was a partnership "composed of Joe Massae and Edwin Massae,' and that "the defendant, Mrs. M. B. Connell, and Drusilla Connell, was and is the same person." The defendants, at the same time, asked leave to amend their answer "by adding the following words to paragraph four, 'except defendant denies that any sum whatsoever is due and owing to plaintiff.' " These matters were heard by the court on the date last above set out and, by order then made, both parties were allowed to amend their pleadings as requested but plaintiff's motion for judgment on the pleadings was denied, and to this denial of its motion plaintiff saved due exception. The court thereupon gave the defendants additional time in which to file answers to plaintiff's petition as amended, and plaintiff time thereafter to reply thereto. No objections or exceptions seem to have been taken to this part of the court's order.

Defendants thereafter filed what is designated an "amended answer" which, other than the inclusion of the amendment asked for by them on the hearing aforesaid, was practically the same as their original answer so far as it directly responded to the allegations of the petition. It elaborated more in detail the affirmative defense previously described. Plaintiff's reply to this answer was, in substance, a general denial.

Complaint is made that the court erred in not granting plaintiff's motion for judgment on the pleadings and to strike. In our view of this point, no error was committed by the ruling attacked. This court has already pointed out that "courts are more liberal in allowing amendments to answers than to petitions." Bissinger & Co. v. Weiss, 27 Wyo. 262, 193 Pac. 527. The amendment to the answer in that case was made pursuant to the power vested in the district court by the well known provisions of Wyo. Comp. St. 1920, § 5707, now section 89-1063, Wyo. Rev. St. 1931, which, in part, reads:

"The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case."

Amendments permitted under this section rest "within the sound discretion of the trial court and the discretion is not interfered with unless some prejudice appears." Bissinger & Co. v. Weiss, supra.

Relative to the matter in hand, the record, as far as we can see, shows not the slightest prejudice to the plaintiff accruing because of the amendment permitted, its presentation of its own case being in no wise hampered thereby. It is perfectly apparent, we think,

from an inspection of the pleadings as they stood at the time the district court passed upon the matter, that the defendants never intended to admit the statement in the fourth paragraph of plaintiff's position that the amount sued for was "due and owing" from them to the plaintiff, and that the omission to deny it was merely an oversight on their part, even if it be assumed as vitally necessary that a specific denial should be interposed thereto. 49 C. J. 258 says that "Generally speaking, a good denial should put in issue only the material facts alleged by plaintiff as constituting his cause of action, and not legal conclusions drawn from them." Many cases are cited in the note to the text quoted above to the effect that a statement that the defendant is not indebted to plaintiff is merely a denial of the conclusion of indebtedness.

It is urged that there was a "total failure" of proof in the case under the law relating to implied warranty, and the affirmative defense put forward in defendants' answer is hence without foundation. We are obliged to disagree with this contention, being of the opinion that the record discloses substantial evidence to uphold the trial court's general finding for the defendants.

Section 98-505, Wyo. Rev. St. 1931, insofar as it is material here, provides:

"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose; * * *

"(6) An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith."

This is the language of the uniform sales act which has been adopted in so many states of the Union. In order that the exceptions set out in the excerpt quoted hereinabove from the statute shall be operative, it is obvious from the language used that two things must appear in evidence: first, that the seller was informed, expressly or by implication, of the purpose for which the goods were purchased; and second, that the buyer relied on the seller's skill or judgment. Pendergrass v. Fairchild, 106 Ore. 537, 212 Pac. 963; Wasserstrom v. Cohen, Frank & Co., 165 App. Div. 171, 150 N. Y. S. 638; Thomson v. Meyercord Co., 174 N. Y. S. 733. It is elementary that these provisions of the statutory law entered into and became a part of the contract of sale made by the parties and involved in this lawsuit.

In the case at bar, the defendant, Mrs. Connell, in the course of her testimony, stated that she went to Mr. Edwards of the Metal Works and asked him if he could build her a still for extracting gasoline from crude petroleum; that he said he could; that he knew all about it, having built the first still Bert Howard ever used in the Utah Refining Company, and also constructed many others; that she told him she wanted a fifty-barrel still, and that she had never seen any; that she didn't know anything about it and would leave it up to his judgment to build the still; that she explained to Mr. Edwards where she expected to use the still, and exhibited to him a sample of the crude petroleum she desired to refine; that he said he would build her a fifty-barrel still of the upright type which he recommended; that the workmanship would be first class, and that it would be all right for refining the oil she showed him and for making gasoline; and that Mr. Edwards then went ahead and built the still which was

delivered to her. This testimony was substantially all corroborated by the testimony of J. A. Massae, who was present when the conversation between Mrs. Connell and Mr. Edwards occurred. While there was testimony given by plaintiff's witness which disagreed with that just described, this, of course, merely produced a conflict which the trial court who saw and heard the witnesses was authorized to resolve in favor of the defendants.

It is plain, therefore, that the court might fairly upon the evidence before it conclude that the vendor knew the purpose for which the still was purchased and was to be used, and that the purchaser relied upon the seller's skill and judgment in constructing it for that purpose.

Relative to the question whether there was a breach of the implied warranty which, under section 98-505 supra, thus arose concerning the still purchased by Mrs. Connell, the general statement of facts hereinabove set forth as gathered from the record here, though some may have been in dispute, establishes that there was substantial evidence from which the trial court could find—as it did by making the general finding for defendants—that there was such a breach.

Section 98-1604, Wyo. Rev. St. 1931, also drawn from the uniform sales act, provides in part:

"Where there is a breach of warranty by the seller, the buyer may, at his election:

"(a) Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price."

While there was an offer to return the still to vendor, this was the course evidently sought to be followed by the defendants, as they asked by their pleading no recovery of any part of the purchase price paid (section 98-1604 supra, subdiv. "(d)"), but simply that they be dismissed from the case with recovery of their

**158**

costs, thus claiming an extinction of any obligation for that part of the price of the still remaining unpaid, and this was the relief given them by the trial court. The cases are clear that, under facts and law involved analogous to those appearing in this case, this may be done. Sharpsville Boiler Works Co. v. Queen City Petroleum Products Co., 23 Oh. App. 319, 156 N. E. 149; W. J. Dyer & Bro. v. Bauer, 48 N. D. 396, 184 N. W. 809; Day Pulverizer Co. v. Rutledge, 238 Ky. 817, 38 S. W. (2d) 949; Alex. G. Goethal Sheet Metal Works Co. v. American Lace Paper Co., 251 N. W. (Wis.) 474; Cretors v. Troyer, 63 N. D. 231, 247 N. W. 558. See, also, Burkett v. Oil Automatic Heating Corporation, 241 Mich. 634, 217 N. W. 897, and American Spiral Pipe Works v. Universal Oil Products Co., 220 Ill. App. 383.

In Alex. G. Goethal Sheet Metal Works Co. v. American Lace Paper Co., supra, the plaintiff brought action to recover the purchase price of a "paper pot dryer" sold by plaintiff to defendant. The defendant denied that the dryer complied with the requirements insisted upon by the defendant. Holding that a judgment for plaintiff should be set aside and plaintiff's complaint dismissed, the appellate court said, among other things:

"If the appellant expressly made known to the respondent the particular purpose for which the goods were required, and relied on the respondent's skill and promise to furnish the article, there was a warranty that the goods would be reasonably fit for such purpose. Wisconsin Statutes, § 121.15. The evidence affords no opportunity for controversy over the proposition that the appellant did advise respondent of, and that respondent understood, the purpose for which the equipment was required. We consider it established without contradiction that a dryer was to be furnished which would properly dry paper pots to the number of 6,000 in ten hours, that the dryer would have to fit the dimensions of the room in which it was

located, and accommodate the rack trucks which appellant was building for the purpose of carrying the pots, and that the respondent undertook to meet those conditions.   *   *   *

"From a review of all the evidence, the only inference that can reasonably be drawn is that the respondent failed in its efforts to meet its obligations under the contract."

In Day Pulverizer Co. v. Rutledge, supra, the vendor brought an action against a buyer for the balance due on the purchase price of a rock crusher.   The vendor appealed from a judgment for the purchaser, entered upon the verdict of a jury.   Affirming this judgment, the Court of Appeals of Kentucky, after referring to the fact that the vendor had given an express warranty guaranteeing the material and workmanship entering into the device, used the following language:

"In addition to this express warranty, there is an implied warranty in the sale of machinery of this character that the article sold is reasonably suited for the use intended.   If it fails to accomplish that purpose, there is a breach of the contract.   Both the express and implied warranty may be relied on as was done here. John S. Noel Co. v. Theobald, 217 Ky. 28, 288 S. W. 1031; Marbury Lumber Co. v. Stearns Manufacturing Co., 107 S. W. 200, 32 Ky. Law Rep. 739; J. B. Colt Co. v. Carrier, 227 Ky. 754, 14 S. W. (2d) 170.   This judicial construction of warranties is now incorporated in the Uniform Sales Act.   Section 2651b-15, Kentucky Statutes, is directly involved and is a part of every selling contract.   It is in part as follows:

" 'Subject to the provisions of this act or any statute in that behalf, there is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

" '(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an

implied warranty that the goods shall be reasonably fit for such purpose. * * *

" '(5) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith.'

"In this case the buyer expressly made known to the seller the particular purpose for which he required the machinery and accepted its recommendation as to what he needed. The machinery failed to do the work, according to the preponderance of the evidence, and the jury was justified in finding for the purchaser. Therefore the claim of the appellant for reversal of the judgment upon the ground that it was entitled to a peremptory instruction or entitled to have the verdict set aside because flagrantly against the evidence cannot be sustained."

It will be recalled that, in the case at bar, the Metal Works gave Mrs. Connell an express warranty of good workmanship. It is evident, under the statute, that this in no way conflicted or interfered with the operation of the implied warranty hereinabove mentioned.

Some other matters are argued in the briefs of the parties but, in view of what has already been said herein, we deem it unnecessary to lengthen this opinion by considering points which would not, in our judgment, affect the ultimate determination of the case. We are satisfied that the result arrived at by the district court was right and that the judgment should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.