# Gay-Coleman Construction Co. v. Mathis.

(Decided June 19, 1934.)

(As Modified on Denial of Rehearing March 19, 1935.)

FRANK. C. MALIN and COLEMAN TAYLOR for appellants.

ERNEST N. FULTON and OSCAR SMITH for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

H. F. Mathis brought this suit against the Gay-Coleman Construction Company, a firm composed of Ruth C. Gay and C. A. Coleman, to recover on a contract for the rent of certain road machinery and the man power to operate it. The number of hours the machinery was operated was stipulated, and the only question for decision is whether the court erred in sustaining a demurrer to the answer and counterclaim as amended.

By the contract, appellee rented certain road machinery to appellants for the duration of its contract on the Russellville-Franklin road. In addition to other stipulations not material, the contract contains the following provisions:

"All to be in first class operating condition, f. o. b. your storage yard eighteen miles East of Bowling Green, Kentucky and you also agree to furnish an operator for the scrapers and a third man for general work with the outfit. All of this for the sum of five ($5.00) dollars per hour for each hour worked. It is further agreed and understood that the three men furnished by you with this equipment will perform the work under the direct supervision of our General Superintendent or his representative in a manner satisfactory to him or his representative and or the representatives of the State Highway Department. * * *

"You further agree to maintain this equipment in first class order and repair during the life of our contract with you and that the cost of the repairs themselves and the labor of installation shall be borne by you, and that except for small incidental delays, we are to pay for this equipment, and the men only for the actual time they work.

"We agree on the other hand to pay you each month as the estimates are received by us from the

State at the rate of five ($5.00) per hour for each hour that we use this equipment and the men and we also agree to furnish all the necessary gasoline, grease and oil for the operation of this equipment but it is distinctly understood that the greasing of this machinery the getting of it ready for work each day shall be done on your time and not on ours.

"We agree that your head man of the three you agree to furnish with this equipment and our timekeeper shall check the time worked each day within twenty-four hours after the work is performed."

We need not set forth the allegations of the original answer and counterclaim. It is sufficient to say that it asked damages for a breach of an oral warranty that the machinery was capable of handling 400 or 500 yards of dirt every day, and that the men were competent to get that result, and appellants concede that they are not entitled to recover for a breach of such warranty.

The amended answer and counterclaim, after setting out the terms of the written contract, proceeds as follows:

"Defendants further state that at the time the contract sued on was entered into the defendants were under contract with the State of Kentucky by and through the State Highway Commission of said state, to grade and surface with traffic bound macadam the Russellville-Franklin road mentioned in the contract sued on, and that the plaintiff was one of the bidders for said contract with the State Highway Commission. That prior to the execution of the contract sued on plaintiff had frequently visited the project known as the Russellville-Franklin road, referred to in said contract, and became familiar therewith and with the nature and character of the work to be performed under the contract with the State Highway Commission, and he was aware of all the conditions and provisions of said contract and competent to bid thereon. They state that at all the times herein and in the petition mentioned the plaintiff was an experienced highway construction contractor and familiar with the type of machinery mentioned in

the contract sued on and possessed with superior skill and knowledge respecting the operation thereof and the nature and character of work to which the same was adaptable, and whether the same was adptable to the work to be performed by the defendants and for which said machinery and men were required by the defendants to be used in the work on said project.

"They state that the price per hour to be paid for the machinery and men as stipulated in the contract sued on was ascertained and agreed to by the plaintiff and defendants on the basis that said machinery was and would be kept in good condition, that the men were competent and skilled men in the operation thereof, and that said machinery when properly operated and in good condition would, and could handle at least four or five hundred yards of dirt per day of ten hours, and, in fact, the said machinery when in good repair and properly operated by three competent men could and should handle four to five hundred yards of dirt per day of ten hours, and defendants informed the plaintiff of, and plaintiff well knew, the nature and character and quantity of work to be performed by said men and machinery and the time within which said work should be done as required by said contract between the defendants and the State Highway Department, which was the work for which said men and machinery were hired to perform, all of which was well known to plaintiff at the time of and prior to the execution of the contract sued on.

"Defendants state that the plaintiff was at the time of and prior to the execution of said contract familiar with said machinery and men, and knew the age and condition of said machinery and the skill and ability of said men, and the nature of the work to be done by said machinery under the contract, and whether said machinery was suitable and adaptable for that purpose, and whether the men were skilled and efficient in such work and whether they could properly operate said machinery and do the work required of them under said contract. They state that they, defendants, were unfamiliar with said machinery and the use thereof

and did not know how to handle and operate the same, and were unacquainted with the men to be furnished by plaintiff and did not know whether they could handle and operate said machinery in a skillful and efficient manner, and they so advised plaintiff of their lack of knowledge respecting such matters, and relied upon plaintiff's knowledge and skill respecting said machinery and the ability of the men to properly operate the same, and relying upon plaintiff's superior knowledge and ability and his knowledge of the machinery and as to whether the men could operate the same properly and efficiently the defendants entered into said contract, all of which was known to plaintiff at the time and prior to the execution of said contract, and by reason of all the foregoing the plaintiff impliedly warranted and represented that said men were competent and efficient men to operate said machinery and that said machinery when operated by them could handle four to five hundred yards of dirt per day of eight hours, and that said machinery and men were suitable and adaptable to the work to be performed by said machinery and men.

"Defendants state that said machinery was not in first class operating condition f. o. b. storage yard of plaintiff mentioned in the contract, and said machinery was not maintained in first class order and repair during the life of said contract, and that plaintiff has charged in his account time when the men and machinery were not engaged in the performance of said contract or engaged in the work of defendants, and that the greasing of the machinery and getting it ready for work each day was not done on plaintiff's time, but partly on defendants' time, and that the time worked each day was not checked by plaintiff's head man and defendants' timekeeper within twenty-four hours after the work was performed, and that the three men furnished by the plaintiff with said equipment did not perform the work under the direct supervision of defendants' superintendent or his representative and the representatives of the State Highway Department, or in a manner satisfactory to defendants' general superintendent or his representative and the representative of the said State Highway Department as provided in said contract

sued on. They state that the said men were not competent and efficient men to operate said machinery and that said machinery when operated by them did not handle four to five hundred yards of dirt per day, except for the first two weeks of the performance of said work when said machinery and men handled four to five hundred yards of dirt per day of ten hours, but thereafter they handled less than one-half that amount daily, and said men idled and loafed on the job and did not exercise skill and good workmanship in the management and operation of said machinery, and that said machinery was not in good condition nor suitable nor kept suitable for the purposes for which it was hired, and the men furnished by plaintiff to operate the same were not suitable men to operate it and did not operate said machinery in a good workmanlike manner as contemplated by the contract of hiring, and immediately after learning thereof defendants repeatedly advised and notified plaintiff thereof.

"Defendants state that by reason of their lack of knowledge of the operation of said machinery they relied solely upon the skill and ability of the men furnished by plaintiff to operate the same, all of which was known to the plaintiff at the time of and before the execution of the contract sued on and during the progress of the work.

"They state that but for the breaches of the contract and warranties herein alleged the work actually performed by the men and machinery hired and the dirt handled by them could have been performed and handled within less than one-half of the time charged for in plaintiff's account sued on, thereby costing defendants 35c per cubic yard to handle the dirt, when same should have been handled by said men and machinery at a cost to defendants of 16c per cubic yard, and the defendants were considerably delayed by reason of each and all the breaches of said contract and warranties herein alleged in the completion of their contract with the State Highway Department, and delayed in the progress of their work on said project to the damage of defendants in the sum of $1,839.00.

"Wherefore, defendants pray judgment over and against the plaintiff for the sum of $1,839.00

and for their cost herein and for all general and equitable relief to which they may be entitled."
The second amended answer is as follows:

"The defendants, with leave of court, amend their answer and counterclaim and amendment thereto, and state that the equipment mentioned in the contract sued on is designed for grading, removing, hauling and transporting dirt, particularly on road construction work, such as was to be handled and removed by the defendants under the contract sued on, and that the reasonable capacity of said machinery is six hundred to eight hundred cubic yards of dirt per day of ten hours when kept in condition as provided in said contract, and that by the contract of rental and hiring sued on it was impliedly warranted that said machinery possessed said capacity, and would handle, remove, transport and dig from six hundred to eight hundred cubic yards of dirt per day of ten hours on the contract and construction work for which said machinery and men were rented and hired to work, and the uses for which the defendants leased said machinery and hired said men, and there is substituted for the figures four to five hundred as used in defendants' pleadings herein the figures six hundred to eight hundred.

"Wherefore, defendants pray as in their answer and counterclaim and amendments thereto."

It will be noticed that the allegations as to the violation of the express warranty are that the machinery was not in first-class operating condition f. o. b. storage yard of plaintiff mentioned in the contract, and was not maintained in first-class order and repair during the life of said contract; that plaintiff had charged in his account time when the men and machinery were not engaged in the performance of the contract; that the greasing of the machinery and getting it ready for work each day was not done on plaintiff's time, but partly on defendants' time; that the time worked each day was not checked by plaintiff's head man and defendants' timekeeper within 24 hours after the work was performed; that the three men furnished by plaintiff with said equipment did not perform the work under the direct supervision of defendants' superintendent or his representative and the representative of the state

highway department, or in a manner satisfactory to defendants' general superintendent or his representative and the representative of the state highway department as provided in the contract; that said men were not competent and efficient to operate said machinery, and that said machinery when operated by them did not handle four to five hundred yards of dirt per day, except for the first two weeks of the performance of said work, when said machinery and men handled four to five hundred yards of dirt per day of ten hours, but thereafter they handled less than one-half that amount daily, and said men idled and loafed on the job and did not exercise skill and good workmanship in the management and operation of said machinery, etc. As it was stipulated that the machinery and men were worked on the days and numbers of hours set out in the account filed with the petition, the claim that plaintiff had charged in his account time when the men and machinery were not engaged in the performance of the contract is eliminated from the case. It is also apparent that the allegation that the greasing of the machinery and getting it ready for work was not done on plaintiff's time, but partly on defendants' time, is too indefinite and uncertain to show any damage on that account. Equally so is the allegation that the work was not done under the supervision of the defendants' representative or the representative of the state highway department. The men were there operating the machinery, and, if appellant or the state highway department did not have a representative there, it was their fault and not the fault of appellee. To say of machinery that it was not in first-class operating condition, or was not maintained in first-class order and repair, or that the three men furnished did not do the work in a satisfactory manner, without alleging any facts showing its actual condition or specifying in what particular it was defective or fell short of being in first-class operating condition, or stating in what respect the work of the men was not satisfactory, does not come up to the standard of even the most liberal rule of pleading, and is not sufficient to show a breach of express warranty. Not only so, but it is admitted that the machinery operated all right for two weeks. That being true, it must have gotten out of condition and in bad repair after that time. Unless appellee knew or was notified of the condition of the machinery, he could

not comply with his agreement to maintain it in good order and repair. Clearly appellants could not go on and use the machinery until the contract was completed and then claim damages for a breach of the agreement with which appellee was given no opportunity to comply. It not being alleged that appellee knew or was notified that the machinery was not in good working order or repair, it cannot be doubted that the answer and counterclaim failed to state a cause of action for breach of that warranty. With respect to the men furnished by appellee, there is no difference in the situation. The only express warranty as to them was that their work should be satisfactory to appellants' general superintendent or representative and to the highway department. Appellants could not wait until the contract was completed and then claim that the work of the men was not satisfactory. If their work was not satisfactory, appellants should have notified appellee immediately and given him an opportunity to furnish other men in their place. On this point the language of the pleading is:

> "And the men furnished by plaintiff to operate same were not suitable men to operate it, and did not operate the machinery in a good workmanlike manner as contemplated by the contract of hiring, and immediately after learning thereof defendants repeatedly advised and notified plaintiff thereof."

This falls short of showing that during the progress of the work appellants advised and notified plaintiff that the men were not suitable to operate the machinery. Although they may have repeatedly advised and notified appellee thereof immediately after learning thereof, for aught that appears in the pleading they may not have learned thereof, or have given any notice until after the work was actually completed. We are therefore constrained to hold that the allegations were not sufficient to show a breach of express warranty.

Appellants insist that the facts pleaded make out a case of breach of implied warranty. Reliance is had upon the rule that where, in a contract of bailment for hire, the use to which the property is to be put is specified in the contract or is known to the bailor, there is an implied warranty that the property shall be reasonably fit for such use, and such warranty, as well as the warranty expressed in the contract, may be relied on

by the bailee. Hoisting Engine Sales Co. v. Hart, 237 N. Y. 30, 142 N. E. 342, 31 A. L. R. 536; Day Pulverizer Co. v. Rutledge, 238 Ky. 817, 38 S. W. (2d) 949. The situation is the same as in the case of express warranty. Appellants could not go on and complete the contract and then claim damages for a breach of an implied warranty that appellee was given no opportunity to make good.

It follows that the demurrer to the answer and counterclaim as amended was properly sustained.

Judgment affirmed.